174 So. 530

**GENTRY v. SWANN CHEMICAL CO.**

**7 Div. 387.**

Supreme Court of Alabama.

April 8, 1937.

Rehearing Denied June 3, 1937.

McCord & McCord, of Gadsden, and John D. Bibb, of Anniston, for appellant.

London & Yancey, of Birmingham, for appellee.

BROWN, Justice.

This is a common-law action on the case, by the servant against the master, to recover damages for personal injury.

The complaint consists of four counts: The first ascribes the injury to a breach of the defendant's common-law duty to furnish the plaintiff with a safe place to work; the second undertook to charge willful or wanton conduct proximately causing the injury; the third is predicated on subdivision 1 of section 7598 of the Code, alleging defects in defendant's ways and works, machinery or plant; and the fourth on subdivision 2 of said section, ascribing the injury to the negligence of a person in the employ of the defendant to whom superintendence of the work and the men engaged in the work was intrusted.

The defendant's demurrer to the complaint was sustained by the trial court; in consequence, the plaintiff suffered a nonsuit and has appealed as authorized by the statute. Code 1923, § 6431.

The appellee insists, however, that the judgment of the circuit court is not a final judgment which will support the appeal.

The judgment, after sustaining the demurrer, recites that "plaintiff takes a nonsuit on account of the adverse ruling of the court, and *it is ordered by the court that a nonsuit be and the same is hereby entered in this cause* and the plaintiff pay the costs in this behalf expended, for which let execution issue."

While it is usual for such judgment entries to "let the defendant go hence," that is the legal effect of the judgment in the instant case, though it is not so recited in terms. Wood v. Coman et al., 56 Ala. 283; Alston v. Marengo County Board of Education et al., 224 Ala. 676, 141 So. 658.

In the cases cited by appellee some of the elements of finality of the judgment

316

there involved were lacking. In Martin v. Alabama Power Co., 208 Ala. 212, 94 So. 76, 77, "the nonsuit is not granted by an order of the court." In Wallace v. Screws, 225 Ala. 187, 142 So. 572, the judgment did not tax the costs, and this, for the purpose of an appeal, was essential to the finality of the judgment. Davis v. McColloch et al., 191 Ala. 520, 67 So. 701; Ex parte Hendree et al., 49 Ala. 360. In Webb v. French, 225 Ala. 617, 144 So. 818, there was merely a recital "the plaintiff takes a non-suit with a bill of exceptions in order to review the several rulings." In Cooper v. Cooper et al., 216 Ala. 366, 113 So. 239, 240, "the judgment entry discloses only that the court sustained the motion of defendants to strike the complaint, and nothing more."

We are therefore of opinion that the judgment in the instant case is a final judgment, and that appellee's insistence is without merit.

The averments of inducement in counts 1, 3, and 4, in the main, are identical; the averments of inducement of the first count are adopted by said other counts.

The first count avers that the defendant, during the year 1934, was engaged in the business of making, preparing, mixing, and refining "Tri-Sodium Phosphate" in its plant in Anniston, Ala.; that plaintiff was in defendant's employ engaged in said work, and was required by the defendant corporation to perform the duties of his service in a room which was not ventilated, with the windows closed, and in the operation of said plant and machinery, the room was filled with fumes, dust, and small particles of the mixture, which fumes, dust, and particles circulated through the room in which plaintiff was required to work, which room was maintained by the defendant and furnished to the plaintiff as a place to perform the duties of his employment, and plaintiff in the exercise of his duties of his employment was forced to breathe and inhale said fumes, dust, and particles and that the same would settle on or stick to his skin and body and he was subject to the action of said fumes and dust and *was ignorant* of the qualities of said "Tri-Sodium Phosphate" or its effect on the human system, and of the effect of the fumes and dust arising from the manufacture, preparation, mixture, and refining of the same, and plaintiff avers that the *defendant corporation* by and through its

servants and agents *in charge* of making, preparing, mixing, and refining said "Tri-Sodium Phosphate" and of the dust and fumes arising therefrom, knew of its effect upon the human system and knew that to inhale the same would inflame and destroy the lining of the nose and nasal cavities and throat and would cause great sores to appear upon the surface of the skin. "Plaintiff avers that with such knowledge he was negligently caused by the servants and agents of the defendant then and there acting within the scope and line of their duties of service to defendant to so labor and perform the duties of his employment in said room and as a proximate result, during the months of July, August, September, October, November and December, 1934, while so engaged in the duties of his employment to defendant he was made sick, his body became covered with sores, his health deteriorated, his digestion impaired, the lining of his nose and nasal cavities were inflamed, eaten and destroyed and he was caused to suffer severe sinus trouble, rheumatic pains, his nervous system broken down and disordered, his lungs impaired, caused to suffer great physical pain and mental anguish, to lose sleep, weight; and he lost his vigor and vitality and became less able to work and earn money and is permanently injured, all of *which injuries and damages he avers did not appear suddenly, violently or by accidental means, but gradually appeared to grow progressively worse as a result of said continuous effect of said fumes and dust on the plaintiff's body or person throughout said months in the year 1934, and he avers he was so injured and damaged as the proximate consequence of the negligence of the defendant, to wit:"*

The count charges that: "The defendant negligently failed to exercise reasonable diligence to provide plaintiff with a safe place in which to perform his work, in that he was caused to perform the duties of his said service in preparing, mixing, making and refining said Tri-Sodium Phosphate in a room, which was not ventilated, with the windows closed, and in the fumes and dust and small particles of said mixture which circulated through the entire room in which plaintiff was forced to work, to his full damage."

The second count avers that "defendant's servants and agents acting for the defendant, within the scope and line of their duties of services to defendant, with

knowledge that plaintiff would be greatly injured and damaged thereby, wantonly, wilfully and intentionally, caused plaintiff to work in a room which was not ventilated, with the windows closed, which room was filled with the fumes, dust, small particles of a mixture being manufactured called 'Tri-Sodium Phosphate' the properties and effect on the human system of the same being unknown to the plaintiff, and as a proximate consequence, plaintiff sustained the injuries and damages" cataloged in the first count of the complaint.

The third count ascribed the injuries to a defect in the ways, works, machinery, or plant of the defendant, "which arose from or had not been discovered or remedied, owing to the negligence of the master or employer * * * or some person in the service of said master or employer * * * intrusted by it with the duty of seeing that the ways, works, machinery or plant were in proper condition, which defect consists in this: that part of the building and room in the same used by the said master or employer, The Swann Chemical Company, * * * in the manufacture of said Tri-Sodium Phosphate, and in which plaintiff was required to work, had the windows and other means of ventilation welded down or closed so as to prevent proper ventilation for the employees while engaged in the manufacture of said Tri-Sodium Phosphate."

The fourth count ascribes the plaintiff's injuries to the negligence of "one Herbert Weaver, a person in the service or employment of the master or employer * * * who had superintendence of the manufacture of said Tri-Sodium Phosphate at which plaintiff was engaged and of the plaintiff, and likewise of the portion of the plant and room where said manufacture was being conducted, intrusted to him * * * whilst in the exercise of said superintendence negligently required the windows in said part of defendant's said plant and the room thereof to be closed down so as to prevent sufficient air in them while said Tri-Sodium Phosphate was being so manufactured by the plaintiff aforesaid."

The contention of appellant is that the averments "which injuries and damages, he avers, did not appear suddenly, violently or by accidental means, but gradually appeared to grow progressively worse as a result of said continuous effect of said fumes and dust on the plaintiff's body or person throughout said months in the year 1934" under the influence of subdivision (i) of section 7596 of the Code, defining the meaning of the word "accident" as used in the phrases "personal injuries due to accident" in articles 1 and 2 of said chapter, meets the burden imposed on the plaintiff by section 7547, to show that his case is not governed by the Workmen's Compensation Act (Code 1923, § 7534 et seq.) or comes within one of the exceptions stated therein. Kaplan v. Sertell, 217 Ala. 413, 116 So. 112; Steagall v. Sloss-Sheffield Steel & Iron Co., 205 Ala. 100, 87 So. 787. And therefore that the complaint states a cause of action under the common law, and under the Employer's Liability Act (Code 1923, § 7598 et seq.).

Appellee's contention, on the other hand, is that the averments of the complaint show that plaintiff's alleged injury and the disability therefrom is the result of "occupational disease," and therefore not a personal injury arising from an accident in the course of his employment within the influence of the Workmen's Compensation Act, and for which the master is not liable either under the common law, or the Employer's Liability Act.

■ There is some confusion in the decided cases in the different jurisdictions as to what constitutes "an occupational disease" as to which the common law imposes no liability on the master, but the weight of authority and the best-considered cases, sustain the view that this rule of the common law is restricted to disease resulting from the ordinary and generally known risk incident to the particular employment and long continued work therein as to which, at common law, the master owed the servant no duty. It does not apply to a disease resulting from the tort of the master, such as the negligence to furnish the servant a safe place within which to work. Gay v. Hocking Coal Co., 184 Iowa, 949, 169 N.W. 360; Industrial Commission of Ohio v. Roth et al., 98 Ohio St. 34, 120 N.E. 172, 6 A. L.R. 1463; Adams v. Acme White Lead & Color Works, 182 Mich. 157, 148 N.W. 485, L.R.A.1916A, 283, Ann.Cas.1916D. 689; In re Hurle (In re American Mutual Liability Insurance Co.), 217 Mass. 223, 104 N.E. 336, L.R.A.1916A, 279, Ann.Cas. 1915C, 919; Hunt v. Lowell Gas Light Co., 8 Allen (Mass.) 169, 85 Am.Dec. 697.

The court in Roth's Case, supra, a case of lead poisoning resulting from heating

paint in a closed room in differentiating an "accident" from occupational disease, observed, "An 'accident' is some happening that occurs by chance, unexpectedly, and not in the usual course of events. It is something that might possibly be prevented by the exercise of due care and caution. In this particular case, if the young man had understood the deadly nature of the fumes he was breathing, he could easily have escaped all danger by opening the doors and windows of the room in which the paint was being heated, and the fact that the accident might easily have been avoided readily distinguishes it from an occupational disease; for, notwithstanding the fact that more than two centuries ago occupational diseases had become so well known as to justify their treatment in a separate volume in the medical literature of that day, nevertheless science has been unable to discover any positive means and methods of prevention. These diseases are incident to certain employments, yet with full knowledge of that fact human foresight cannot defend against them." 98 Ohio St. 34, 120 N.E. 172, 174, 6 A.L.R. p. 1466. This observation clearly demonstrates the basis upon which the common-law rule of nonliability for injuries resulting from "occupational diseases" rests, and serves to exclude from that rule injuries that are preventable by the exercise of reasonable diligence in circumstances the law imposes a duty on the master to use such care to protect the servant from such injuries.

■ "That it is the duty in general of an employer to exercise due care to provide a reasonably safe place, having regard to the kind of work involved, in which his employees may do the work assigned to them cannot be denied; and, where this duty is delegated to an employee, as of necessity it frequently must be, the employee to whom it is delegated represents the master or employer in such sense that the latter is liable for his negligence in its discharge. 4 Labatt, Mast. & Ser. (2d Ed.) § 1483. But the duty of maintaining the safety of the place is not absolutely personal to the master, and the rule established by the decisions of this court, in common with others of excellent authority, is that it may be discharged by committing its performance to agents carefully selected for competency and fitness." Langhorne et al. v. Simington, 188 Ala. 337, 344, 66 So. 85, 87.

■ So, also, "an obligation rests upon the employer to acquaint his employee with the danger which can be ascertained by knowledge of scientific principles governing substance and processes used in the employment, and to which in his ignorance the employee will otherwise be subject." 18 R.C.L. 571, par. 78; Adams v. Grand Rapids Refrigerator Co., 160 Mich. 590, 125 N.W. 724, 27 L.R.A.(N.S.) 953, 136 Am.St.Rep. 454, 19 Ann.Cas. 1152.

This principle stated in another form "it is the imperative duty of the master to inform the servant of all latent dangers incident to the service, and instruct him as to their avoidance." Holland v. Tennessée Coal, Iron & Railroad Co., 91 Ala. 444, 452, 8 So. 524, 526, 12 L.R.A. 232.

And, again, "As matter of law a master engaged in a business inherently dangerous to the life and health of employees is bound 'to become informed of those matters of scientific knowledge possessed by men of general education and information relative to the danger and hazard'" and to warn his employees of such danger and the method of avoiding the same. Thompson v. United Laboratories Co., 221 Mass. 276, 280, 108 N.E. 1042, 1044; Smith, Administratrix, v. Peninsular Car-Works, 60 Mich. 501, 27 N.W. 662, 1 Am.St.Rep. 542.

■ While counts 1, 3, and 4 of the complaint cannot be said to be models of perspicuity and clearness, when considered in the light of the foregoing well-settled principles of law, they state substantial cause of action, the first under the common law and the others under the Employer's Liability Act, and are not subject to any of the objections stated in the demurrer, unless it can be said that plaintiff's injuries were caused by "an accident arising out of and in the course of his employment" within the meaning of the Workmen's Compensation Act (now sections 7534–7542 of the Code 1923). Code 1923, § 9479.

■ It is not a matter of doubt, that the Workmen's Compensation Act, in general, was intended as in the nature of a substitute, between master and servant who elect to come within its provisions, for actions of tort—for personal injuries at common law—and under the state Employer's Liability Act, or other statute giving the employee a right of action. Chap-

man v. Railway Fuel Co., 212 Ala. 106, 101 So. 879.

■ However, in the light of the provisions of section 13, of the Constitution of 1901, "That all courts shall be open; that every person, for any *injury* done him, in his lands, goods, *person,* or reputation, shall have a remedy by due process of law" it cannot be said that for an injury done a person, not within the provisions of the Workmen's Compensation Act, that it was the legislative intent by the enactment of said law, to deny such person a remedy, if under the common law or the Employer's Liability Act, or other statute he was entitled to maintain an action therefor. So the question to be determined is, Was the plaintiff's injury "a personal injury" caused "by *accident* arising out of and in the course of his employment?"

■ The plaintiff's injury not being the result of "occupational disease," as we have shown, but, if the averments of the complaint are true, and on demurrer we so take them, the result of negligence of the master or of persons in its employ for whose negligence it is responsible, we have no difficulty in holding that the injury is a personal injury. In re William Hurle, 217 Mass. 223, 104 N.E. 336, L.R.A.1916A, 279, Ann.Cas.1915C, 919.

It is held by many courts of last resort that "A disease contracted as a direct result of unusual circumstances connected with the work, and not as an ordinary or reasonably to be anticipated result of pursuing the work, is to be considered as an injury caused by accident." See annotations, L.R.A.1916A, pp. 290, 291.

The question as to what constitutes an "accident within the meaning of the Workmen's Compensation Laws of the different jurisdictions, as the authorities show, is a much vexed question and has been the cause of constant litigation. This was so at the time the Legislature of this state, following the Minnesota act, enacted the Workmen's Compensation Law, and to clarify this question, following the Minnesota law, defines the word accident as follows: "The word 'accident' as used in the phrases 'personal injuries due to accident' or 'injuries or death caused by accident' in articles 1 and 2 of this chapter shall, unless a different meaning is clearly indicated by the context, *be construed to mean an unexpected or unforeseen event,*

*happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body, by accidental means."* Code 1923, § 7596, subd. (i). (Italics supplied.) The same section, subdivision (j), provides that "a disease unless the disease results proximately from the accident" is not within the Compensation Act.

The Minnesota Supreme Court, in a well-considered opinion, in the case Young v. Melrose Granite Co., 152 Minn. 512, 189 N.W. 426, 428, 29 A.L.R. 506, decided July 14, 1922, ruled that the Minnesota act does not cover injuries resulting to the muscles and nerves of a workman through the too long continuance at a task with a defective machine, work too heavy for the workman, where there is no sudden or violent event producing at the time injury to the physical structure of the body.

The court, after an analysis of the section of the act defining "accident," concluded the opinion in the following words: "We are mindful of the legislative design to compensate those accidentally injured in the operation of our industries, but we also see in the care with which such injuries are defined an intention not to cover ailments of gradual development which ingenious medical experts may by uncertain theories trace back over months and years as due to overwork or too long continued exertion of some muscles. The fact that the law specifically denies compensation unless the employer obtains knowledge of the injury or notice of the same be served upon him within 90 days after its occurrence indicates an intention not to include such as the case at bar, which takes months or even years to manifest itself."

We are impressed with the logic of the opinion in that case, and we hold that the averments of the complaint in the instant case removes it from the influence of the Workmen's Compensation Act, and leaves the plaintiff to his remedy at common law and under the Employer's Liability Act.

The court erred, therefore, in sustaining the defendant's demurrer to counts 1, 3, and 4 of the complaint, and for this error the case must be reversed.

■ The second count was subject to the objection that it charges that the plaintiff was "wantonly, wilfully and intentionally," caused to do his work in the unventilated room, rather than that his injury was so caused, and the demurrer thereto

**320**

was properly sustained. Jones v. Keith, 223 Ala. 36, 134 So. 630; Alabama Power Co. v. Gooch, 221 Ala. 325, 128 So. 793.

For the error noted, the judgment is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.