## WOODWARD IRON CO. v. MINYARD.

### No. 12425.

United States Court of Appeals
Fifth Circuit.

Nov. 12, 1948.

B. J. Dryer, of Birmingham, Ala., for appellant.

D. G. Ewing, of Birmingham, Ala., and W. E. Brobston, of Bessemer, Ala., for appellee.

Before McCORD, and LEE, Circuit Judges, and MIZE, District Judge.

McCORD, Circuit Judge.

A. F. Minyard sued Woodward Iron Company, a corporation, claiming damages because of an alleged failure to furnish him, while employed by defendant, with a safe place in which to work; it was charged that as a proximate consequence plaintiff developed a dust disease of the lungs known as silicosis. By amendment at the trial, the complaint consisted of only one count, which claimed damages for aggravation or acceleration of the disease during the period from December 10, 1945, to September 13, 1946.

The defendant, in answer offered in defense of the action (1) the general issue; (2) contributory negligence; (3) assumption of risk; (4) statute of limitations of one year; and (5) that plaintiff's injury

was an occupational disease for which no recovery could be allowed.

By consent of the parties, the case was tried before the court without a jury.

The evidence discloses that plaintiff, a man approximately fifty-three years of age, began working for the defendant in the year 1923, and had served defendant continuously until he was forced to leave because of poor health on September 13, 1946. Defendant has been engaged in the operation of ore mines and related activities for more than twenty-six years. While in the service of defendant, plaintiff worked at practically all types of mining jobs. Throughout the years of his employment, in the discharge of his various mining duties, plaintiff was forced to breathe much dust. In the year 1943, he commenced to suffer from dyspnea as he went about his work. At first he ignored this symptom, and held to his work at the mine. However, as time passed his suffering increased and he developed a cough which caused him to expel from his lungs red ore dust, and later much purulent material. The dyspnea and cough became progressively worse, and finally so severe that he was forced to report to defendant's physician for examination and treatment. Upon examination, plaintiff was referred by defendant's doctor to two other doctors, specialists in radiology, to have his chest X-rayed. Their examination disclosed that plaintiff then had silicosis, nodular type, a dust disease of the lungs. Plaintiff was afterwards advised by defendant's doctor to remain in the open air for a period of approximately six weeks, and that after that period he might be able to re-enter the mines and work with safety to his health. Defendant thereupon removed plaintiff from the mines and placed him on light work around the furnaces above ground. After three months of this type work, during which time his suffering had somewhat abated and his health had improved, plaintiff was notified by defendant that he might remain in his new place, but that his salary would be reduced accordingly. When informed of this, plaintiff threatened to leave the service of defendant, but was told that his services were needed in another mine. The evidence further shows that plaintiff thereafter remained in the employ of defendant working in its Pyne Mine, as he was told to do, and that he there necessarily exposed himself to a dust hazard equally as bad, if not worse, than the one he had previously been forced to leave. His new mining duties in the Pyne Mine involved mining for red iron ore, containing a large percentage of silica. Because of blasting and drilling activities in the mine, large amounts of silica dust were precipitated into the atmosphere where plaintiff and other miners worked. As a result, during the last ten months of his employment with defendant in the Pyne Mine, plaintiff's dyspnea increased, his cough became much worse, and his health failed. His condition interfered to a marked degree with his rest at night. He lost his appetite, and frequently became nauseated at work during the day. His weight decreased from one hundred and thirty-five pounds to one hundred and twenty-two pounds. His cough and dyspnea eventually became so incapacitating that he was forced to leave his job on September 13, 1946, after he had held on as long as his progressive malady would permit.

It was shown that blasts were set off in the Pyne Mine at the end of each working shift which forced clouds of silica dust into the recesses of the mine where plaintiff and others worked; that the ventilation in the mine was wholly inadequate to remove the dust following the explosions; that the only means provided by defendant for allaying the dust was a water hose with inadequate pressure and no nozzle provided, so that the miners were required to compress the water at the end of the hose with their hands in order to obtain any spray. Plaintiff was not provided with a respirator, and was not informed that defendant would provide respirators for its miners at their request. It was further shown that certain methods and processes for reducing and controlling the effect of the harmful concentrations of silica dust in its mines were available to defendant at all times from November 24, 1945, to September 13, 1946; that such measures, though entailing additional expense, were practical and effective, and included the employment of wetting agents, the use of a water curtain, misting processes, more adequate ventila-

tion, periodic medical examinations of miners exposed, and an increase in the interval between working shifts after the explosions were set off. Defendant reserved to its policy making board, and did not delegate to agents, the decision as to the means and methods to be employed in maintaining safety and health precautions within its mines, and it was shown that no· effective dust control measures were ever instituted by that body.

The trial court found that the Pyne Mine where plaintiff last worked for defendant contained harmful silica dust of pathogenic quantity and size; that plaintiff was exposed to this silica dust and inhaled it without adequate protection therefrom; that his silicotic condition was aggravated thereby, and that approximately one-third of his present sixty per-cent permanent disability is the result of his inhaling silica dust during the period for which recovery is sought. In a well considered opinion, the court thereupon gave judgment for the plaintiff and assessed his damages at $10,000.

We are of opinion the evidence fully supports the trial court's conclusion that defendant, by failing to adopt effective methods designed to eliminate the harmful concentrations of silica dust in its mines, thereby breached its duty to provide plaintiff with a reasonably safe place in which to work. Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530; Hardy v. City of Dothan, 234 Ala. 664, 665, 176 So. 449.

Plaintiff, by merely performing the duties assigned him by defendant, was not guilty of contributory negligence, nor did he assume the risk of a constant dust hazard resulting from the negligence of defendant during the term of his employment. Under the Alabama decisions, a servant does not assume the risk of his master's own negligence. Alabama Great So. R. Co. v. Brooks, 135 Ala. 401, 33 So. 181; Louisville & N. R. Co. v. Handley, 174 Ala. 593, 56 So. 539; Citizens Light, Heat & Power Co., v. Lee, 182 Ala. 561, 62 So. 199. Moreover, silicosis is not an occupational disease, because it does not result from the ordinary and generally known risks inherent and incident to employment in the mining industry. American Mutual Liability Ins. Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677; Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530.

We further find no merit in appellant's contention that this action is barred by the Alabama one year statute of limitations. American Mutual Liability Ins. Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677; Howell v. City of Dothan, 234 Ala. 158, 174 So. 624; Lehigh Portland Cement Co. v. Donaldson, 231 Ala. 242, 164 So. 97; Cf. Michalek v. U. S. Gypsum Co., 2 Cir., 76 F.2d 115.

There appearing no reversible error in the record, the judgment is accordingly ·Affirmed.