LEONARD HED v. BROCKWAY GLASS COMPANY AND ANOTHER.

244 N. W. 2d 28.

June 4, 1976—No. 45869.

74

*Jardine, Logan & O'Brien* and *Alan R. Vanasek,* for relators.
*Lais, Bannigan & Ciresi* and *Donald L. Lais,* for respondent.

MacLaughlin, Justice.

The employer and insurer seek review of a decision of the Workers' Compensation Board awarding the employee benefits for permanent and total disability and medical expenses. The issue on appeal is whether the board's finding that the employee's injuries arose out of and in the course of his employment is supported by substantial evidence.

The employee was injured on December 12, 1971, when his automobile left State Highway No. 3 north of Rosemount, Minnesota, minutes after he left the premises of his employer, Brockway Glass Company, at the end of his workday. The employee has no memory of the events that transpired from the time he entered onto Highway 3 until after the accident. It is his claim that the accident resulted from falling asleep or passing out which was caused by unusual fatigue due to the exertion and stress of his employment.

At the time of the accident the employee was 50 years old and had a 31-year work history as a bricklayer. He began work at the Brockway Glass Company on December 10, 1971, approximately 1 week after the completion of his previous job. His work hours were 8 a. m. to 6:15 p. m. with a 30-minute lunch break and two 15-minute coffee breaks so that he was engaged in work

activities for a total of 9 hours and 15 minutes. The normal workday was 8 hours for the employee and bricklayers generally.

The employee's duties at Brockway consisted primarily of laying firebrick, each of which weighed approximately 12 pounds, in the floor of a glass furnace. The temperature in his work area was so warm that the employees perspired freely though working in T-shirts. Other employees testified that the work at Brockway was harder than the usual brickwork and that the longer work hours left them more tired than usual. The longer hours resulted from a desire of the employer to complete the job as soon as possible because the shutdown of a glass furnace curtailed production.

The employee worked Friday and Saturday, December 10 and 11, without incident or noticeable physical difficulty. Toward the end of the day on Sunday, December 12, he noticed that he was becoming very tired. At 6:15 p. m. he went to the employee locker room feeling very "beat" and shaky. Another worker at Brockway, who was last to see the employee before he left the premises, noticed that his hands were shaking quite badly and that as a result he had a great deal of difficulty zipping his lunch and thermos bag. He described the employee's appearance as follows:

"* * * On the evening of his accident, I was getting ready to go home after work. Leonard was getting ready to go home also. I noticed he was trying to zipper up his lunch and thermos bag, but his hands were shaking so badly he couldn't zip it shut. * * * I said: 'Why don't you sit down and we'll shoot the breeze a bit.' When he sat down, his hands had stopped shaking. Again, I asked him if he wasn't feeling well. When he was trying to close the bag it was like old people get. The more tedious it got, the more nervous he got. When I talked to him while he sat on the bench, I got right down in front of him. I had had a heart attack and at first I thought he was having a heart attack. But he seemed to have a good complexion. His breathing wasn't unusual.

His speech was unusual. His eyes were dull and starey. I would ask him a question and it would seem like it would take him (3) three or (4) four seconds to answer. He acted like he was in a daze. We stayed there for (15) fifteen or (20) twenty minutes and he wanted to go home. I offered to drive him home but he said he was feeling fine. I must admit that he seemed to improve a lot during that (15) fifteen or (20) minutes but I didn't feel quite right about him driving home. I offered again to drive him home but he said he was fine. I asked him if he wanted me to follow him home and he said: 'No,' he was 'feeling fine.' "

The employee walked to, unlocked, and started his car. He sat for a few minutes while defrosting the windows and then drove from the parking lot a short distance to Highway 3. There was evidence that the employee drove north on Highway 3 at about 40 miles per hour. Approximately 1 mile north of the Brockway plant the employee's car went off the road, down a slope, across a level area, and up another slope before hitting a tree. The car was proceeding at a normal speed and there was no indication of any problem until the car went off the road and down the enbankment. No skid marks were found on the road's surface and the tracks of the employee's car were straight without erratic movements. The first persons to reach the employee's car found him on the floor of the front seat with a cut on his forehead.

Although, as is often the case, there was some dispute among the medical experts as to the possible relationship between the employee's work activities and the loss of consciousness, there was sufficient medical testimony and corroborative evidence from which the compensation board could reasonably conclude that the employee's alleged loss of consciousness was causally related to his employment.

The employer and insurer argue that the compensation board's award is based upon speculation and conjecture and must therefore be reversed. They contend that facts adduced by the employee could equally support either of two conclusions: that the

employee lost consciousness as a result of fatigue from his employment, and as a result drove off the surface of the road; or that the employee's car left the road surface through some other cause and that his loss of memory resulted from the head injury and concussion sustained in the accident and not as a result of the stress of employment. They conclude that since either inference may be drawn with equal justification, neither is of evidentiary weight. See, Saaf v. Duluth Police Pension Relief Assn. 240 Minn. 60, 59 N. W. 2d 883 (1953).

We reject this contention. From the description of the employee's demeanor, the temporal and spatial proximity of the accident to his work, his loss of memory from the time his car entered Highway 3, and the absence of evidence indicating any attempt to control the car either before or after leaving the surface of the road, the compensation board could reasonably infer that the employee lost consciousness before losing control of his automobile and that it was caused directly by fatigue resulting from his employment. There being substantial evidence to support the findings of the compensation board, its decision must be affirmed. Strei v. Church of St. Joseph, 290 Minn. 565, 188 N. W. 2d 879 (1971); Minn. St. 15.0425(e).

Respondent is allowed attorneys fees of $350 on this appeal. Affirmed.