**Melvin SWANSON, by Sharon SWANSON, Relator,**

v.

**FAIRWAY FOODS and National Union Fire Insurance Company, Respondents.**

No. C6–89–127.

Supreme Court of Minnesota.

May 19, 1989.

Peder B. Hong, Red Wing, for relator.

Michael C. Jackman, Bloomington, for respondents.

POPOVICH, Chief Justice.

This is an appeal from a decision of the Workers' Compensation Court of Appeals reversing by majority decision the compensation judge's determination that the employee's death in an automobile accident on his way home from work arose out of and in the course of his employment with the employer. We affirm.

I.

The facts in this case are basically undisputed. Melvin Swanson began working for Fairway Foods on February 2, 1984 as a part-time "order filler" at the employer's

warehouse in Northfield, Minnesota. This job required Swanson to locate ordered cases of food items in the warehouse and place them on pallets for the ultimate delivery to retail grocery stores. The work was strenuous, and Swanson was one of the top workers.

He normally worked the night shift from 9:00 p.m. until 5:00 a.m. Part-time employees were on call, 7 days a week, based upon a seniority list but could refuse 3 calls to work after which they would be moved to the bottom of the seniority list. Employees refusing 5 calls to work could be discharged. A part-time employee needed on any given evening would normally be called between 4:00 p.m. and 6:00 p.m. and expected to report for work at 9:00 p.m. on that evening. A part-time employee could be called after 6:00 p.m., but that usually occurred when another employee had called in sick.

Swanson's wife and her sister had a catering business. In April 1984, Swanson and his wife began renovating a building in Red Wing which they called "Sea Wing," intending to use it as a rental hall for receptions, parties and other events as an expansion of the catering business. He spent time in April and May 1984 repairing and reconstructing Sea Wing for the catering business.

Swanson worked for the employer on May 12, 1984, from 8:00 a.m. to 4:00 p.m. and on May 13, 1984, from 9:00 p.m. to 5:00 a.m. He was not called into work on Monday, May 14, 1984.

On Tuesday, May 15, 1984, relator arose at 6:00 a.m. After performing some chores at the family farm, he went to Red Wing to work remodeling the Sea Wing building and returned home around 8:00 p.m. He told his wife that he was tired and was going directly to bed. At approximately 9:00 p.m., the employer called relator to come to work that evening. Although part-time order fillers usually did not work the Tuesday evening shift, Swanson had on occasion worked this shift. Relator found a substitute but was told that if he did not report for work, he would be placed on the bottom of the seniority list. Because rela-

tor was called at 9:00 p.m., he was unable to take his usual nap prior to leaving for work. He drove his father's car to work because it had a radio which would help him stay awake.

Relator punched in at 9:50 p.m. and worked until 5:00 a.m. the following morning performing his usual duties. On his way home from work, relator was killed in an automobile accident approximately 24 miles from the employer's warehouse. His car had left the road, traveled through a guardrail, down an embankment and hit a tree. The route traveled from the warehouse to the accident scene required Swanson to drive through two towns, two stop lights, one stop sign and four turns. An expert in the field of accident reconstruction believed the accident occurred because relator had fallen asleep at the wheel.

At the claim for dependency benefits hearing, the parties provided expert evidence, favorable to their respective positions, whether relator's work activities played a significant role in causing his death. The compensation judge found the testimony of the relator's expert persuasive and accepted his opinion that the employee's work was a substantial contributing cause of the employee's fatigue which, in turn, caused the accident. Relying on *Hed v. Brockway Glass Company*, 309 Minn. 73, 244 N.W.2d 28 (1976), the compensation judge concluded relator's death arose out of and in the course of his employment. On appeal, by majority decision, the Workers' Compensation Court of Appeals factually distinguished *Hed* and reversed the compensation judge's finding of a causal connection between Swanson's death and his employment. By writ of certiorari, the relator has sought review of that decision.

II.

As a condition precedent to recovery under the Workers' Compensation Act, an employee has the burden of showing that an injury arose out of and in the course of employment. *MacNamara v. Jennie H. Boyd Trust*, 287 Minn. 163, 167, 177 N.W. 2d 398, 400–401 (1970); Minn.Stat.

§ 176.021, subd. 1 (1984).[1] As a general rule, injuries suffered by an employee while commuting to and from work are not compensable. *Kahn v. State*, 289 N.W.2d 737, 742 (Minn.1980); Minn.Stat. § 176.011, subd. 16 (1984).[2] The general rule, however, is not without exceptions. In *Hed v. Brockway Glass Company*, 309 Minn. 73, 244 N.W.2d 28 (1976), this court affirmed an award of compensation where significant overtime work increased the factor of fatigue which contributed to the employee's automobile accident. We agree with the Workers' Compensation Court of Appeals' conclusion that the *Hed* case is not dispositive of the matter before us but for different reasons than stated in the Workers' Compensation Court of Appeals' opinion. That court determined the factual underpinnings of *Hed* were not present in this matter. In our view the basic legal justification upon which the *Hed* case was premised is lacking here.

The *Hed* case, according to Professor Larson, essentially involved a special errand exception. This exception is explained by the professor as follows:

> The rule excluding off-premises injuries during the journey to and from work does not apply if the making of that journey, or the special degree of inconvenience or urgency under which it is made, whether or not separately compensated for, is in itself a substantial part of the service for which the worker is employed.

1 A. Larson, *The Law of Workmen's Compensation* § 16.00 (1985). The special errand rule is invoked when employees with regular hours were required to work overtime under circumstances that made the travel to and from work more hazardous. *Id.* at § 16.14. Professor Larson has categorized *Hed* as a special errand case where "the longer hours of work made the homeward trip more hazardous." *Id.* at § 16.14 n. 28.

Here relator did not work regular hours; and the special errand rule does not apply to cases where the employee has a fixed place of work but works irregular hours basically because under these circumstances there is little on which the "special errand" justification can attach. *Id.* at § 16.04. It is important to note this case was never litigated as a "special errand" case, and none of the parties raised this issue. Swanson was subject to call at any time and when called to work, worked his normal hours and performed his regular duties.

On appeal to this court, relator adopts the position of the dissenting panel member of the Workers' Compensation Court of Appeals and contends this case comes within the "special hazard" exception to the general exclusion of off-premises injuries. That exception has no application here. *See Gibberd by Gibberd v. Control Data Corp.*, 424 N.W.2d 776 (Minn. 1988); *see generally*, 1 A. Larson, *supra*

1. Minn.Stat. § 176.021, subd. 1 (1984) provides:
   Liability for Compensation. Except as excluded by this chapter all employers and employees are subject to the provisions of this chapter. Every employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence. The burden of proof of such facts is upon the employee.
   If the injury was intentionally self-inflicted or the intoxication of the employee is the proximate cause of the injury, then the employer is not liable for compensation. The burden of proof of these facts is upon the employer.

2. Personal injury is defined in Minn.Stat. § 176.011, subd. 16 (1984) as:
   Personal Injury. "Personal injury" means injury arising out of and in the course of employment and includes personal injury caused by occupational disease; but does not cover an employee except while engaged in, on, or about the premises where his services require his presence as a part of such service at the time of the injury and during the hours of such service. Where the employer regularly furnished transportation to his employees to and from the place of employment such employees are subject to this chapter while being so transported, but shall not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him, and not directed against him as an employee, or because of his employment.

§ 15.13(a). In *Gibberd* we discussed the "special hazard" exception and said:

The exception is applicable only if by virtue of the employment the employee is exposed to a hazard which originates on the employment premises, is a part of the working environment, or if it peculiarly exposes the employee to an external hazard which subjects the employee to a greater personal risk than one has when pursuing ordinary personal affairs.

424 N.W.2d at 783 (footnotes omitted).

While the facts here are certainly tragic, under the current statutory scheme and our prior decisions, relator's death while commuting home from work after a normal work shift is not compensable under the Workers' Compensation Act.

Affirmed.

YETKA, Justice (dissenting).

I dissent. I would reverse the Workers' Compensation Court of Appeals and reinstate the compensation judge's award of benefits pursuant to *Hed v. Brockway Glass Co.,* 309 Minn. 73, 244 N.W.2d 28 (1976).

It seems to me that this case fits the special errand exception. The decedent did not work regular hours, but was usually notified at least 4 hours prior to the time he was to report if the employer wanted him to work on a particular day. On the night of the accident, he was not called until 9:00 p.m., the very time he usually reported. Moreover, he was not allowed to call a substitute, did not have a chance to rest before work as he normally would have, and was threatened that he would be dropped to the bottom of the seniority list if he didn't report. Under those extreme conditions of stress, I believe both the work and the trip homeward were made more hazardous, warranting a finding of coverage.

WAHL, Justice (dissenting).

I join the dissent of Justice YETKA.