850 So.2d 322 (2001)
Debra L. BRITT
v.
SHELBY COUNTY HEALTH CARE AUTHORITY d/b/a Shelby Medical Center.
2991083.
Court of Civil Appeals of Alabama.
April 13, 2001.
Rehearing Denied June 1, 2001.
*323 James M. Patton of Patton & Veigas, P.C., Birmingham, for appellant.
Mark W. Lee and Dorothy A. Powell of Parsons, Lee & Juliano, P.C., Birmingham; and Michael J. Cohan of Webb & Eley, P.C., Montgomery, for appellee.
*324 CRAWLEY, Judge.
In 1995, Debra L. Britt was employed as a respiratory technician at Shelby Medical Center ("the Hospital").[1] She worked weekend double shifts16 hours on Saturdays and 16 hours on Sundays, with an 8-hour break between shifts. At the end of her second shift, on Sunday night, February 26, 1995, Britt was driving home from work when she fell asleep. She was seriously injured when her car crossed the median and overturned.
Britt sued the Hospital, alleging both a tort claim based on negligence and a workers' compensation claim. On the negligence claim, the circuit court entered a summary judgment for the Hospital. On the workers' compensation claim, the court conducted a bench trial and then entered a judgment for the Hospital. The court's judgment is accompanied by the following order:
"This matter came on for trial on April 5, 2000. Plaintiff originally pled two alternative theories of recovery. The first was a traditional tort theory of recovery based upon negligence. The Court entered Summary Judgment in favor of Defendant on the tort claim on October 7, 1998. Plaintiff's second claim is under the statutory scheme provided by the [Workers'] Compensation Act of Alabama.
"Plaintiff regularly worked two (2) sixteen (16) hour shifts each weekend, separated by eight (8) hours. She claims this work schedule caused fatigue which led to her injuries. On February 26, 1995, Plaintiff reported to work at approximately 6:30 a.m. and left work at approximately 11:00 p.m. While traveling home in her personal automobile, she was involved in a single car accident for which she now claims [workers'] compensation benefits. The Court finds that Plaintiff fell asleep while driving home thereby causing her automobile accident.
"It is well established in Alabama that accidents and injuries which occur while an employee is traveling to or from their place of employment are not compensable because they do not arise out of, nor do they occur during the course of employment. Winn-Dixie Stores, Inc. v. Smallwood, 516 So.2d 716 (Ala.Civ.App. 1987). Although the specific issue raised in this case has not been previously addressed [in Alabama], Alabama courts have addressed several other exceptions to the general rule. See Minor v. Alabama Specialties, Inc., 598 So.2d 938 (Ala.Civ.App.1992) (employer may be liable where the employer provides transportation to or from work); Tucker v. Die-Matic Tool Co., 652 So.2d 263 (Ala.Civ.App.1994) (employer may be liable where the employee is still `on duty' and acting in furtherance of the employer's interest, also known as the `dual purpose doctrine'); Terry v. NTN-Bower Corp., 615 So.2d 629 (Ala.Civ.App. 1992) (employer may be liable if the employer has control over the instrumentality and the accident occurs in an area adjacent to the workplace).
"In this case it is undisputed that the Plaintiff was in her personal car, that she was not still on duty or acting in furtherance of [the Hospital's] interest, and that the accident did not occur in an area where [the Hospital] exerted any control over Plaintiff. When Plaintiff accepted employment with [the Hospital] *325 as a Respiratory Technician, she knew that she would be required to work on Saturdays and Sundays, each day consisting of a 16 hour shift. She had worked these shifts for approximately one year before the accident.
"The parties cite various cases from other jurisdictions as persuasive authority, including Swanson v. Fairway Foods, 439 N.W.2d 722, 723 (Minn.1989), and Hed v. Brockway Glass Co., 309 Minn. 73, 244 N.W.2d 28 (1976). See Brunson Milling Co. v. Grimes, 267 Ala. 395, 103 So.2d 315 (1958). As in the Swanson case, the facts in this case are tragic, but under the current statutory scheme and present case law, this Court finds that there is no basis for compensability under the Alabama [Workers'] Compensation Act."
Britt appealed to this court. We affirm the judgment as to the workers' compensation claim, but reverse the judgment as to the negligence claim and remand the cause for further proceedings.

I. The Workers' Compensation Claim

Britt testified that she thought the length and conditions of her shift at work caused the fatigue that led to her falling asleep on the drive home from work. She described her job duties as long, gruelling, and stressful. At trial, Britt introduced the deposition testimony of two expert witnesses who stated that, because of her unusually long shifts and the short interval between shifts, she was at a higher risk for fatigue and the effects of sleep deprivation than other employees in the general population. Both experts said that sleep deprivation was a factor in causing Britt's accident. Britt also introduced several articles and studies from the National Sleep Foundation and the National Traffic Safety Administration finding a correlation between extended shift hours and fatigue-related automobile accidents.
Both experts gave their opinion that Britt's risk of fatigue while driving was not minimized by the fact that she had weekdays off or that she had been working the same shifts for a year. They stated that the human body cannot "bank sleep," or properly adjust to a lack of sleep that recurs two out of every seven days.
Generally, an accident that occurs while a worker is traveling to or from work is not considered to arise out of and in the course of employment, for purposes of workers' compensation law. See Hughes v. Decatur Gen. Hosp., 514 So.2d 935 (Ala.1987); Process Equip., Inc. v. Quinn, 701 So.2d 29 (Ala.Civ.App.1997). This principle is known as the "going-and-coming rule." See A. Larson, Larson's Workers' Compensation Law § 13.01 (2000). As the trial court's order points out, Alabama has recognized several exceptions to the rule, none of which applies here. Britt was not paid for her travel time to and from work or reimbursed for her travel expenses; she was not acting in furtherance of any job duties at the time of her accident; and she was not performing any act on behalf of the Hospital during the drive home.
Although no Alabama decisions address the issue presented here, the decisions of Minnesota courts, construing the Minnesota workers' compensation laws, are persuasive, because our compensation act was patterned after the Minnesota act. See Brunson Milling Co. v. Grimes, 267 Ala. 395, 103 So.2d 315 (1958). As the trial court's order indicates, two Minnesota decisions are instructive. See Swanson v. Fairway Foods, 439 N.W.2d 722 (Minn. 1989), and Hed v. Brockway Glass Co., 309 Minn. 73, 244 N.W.2d 28 (1976).
In Hed, the worker was a 50-year-old bricklayer who worked 9 hours and 15 minutes laying 12-pound firebrick in the *326 hot floor of a glass furnace. The normal workday for a bricklayer was eight hours. At the end of the day, a co-employee, noticing that the worker looked exhausted, offered to drive the worker home or to follow him home, but the worker said he was fine. The worker left in his car; about a mile from the plant, the worker fell asleep at the wheel. He was injured when his car left the roadway and hit a tree. The Minnesota Supreme Court affirmed an award of workers' compensation benefits, stating that one could reasonably infer from the evidence that "the employee lost consciousness before losing control of his automobile and that it was caused directly by fatigue resulting from his employment." 309 Minn. at 77, 244 N.W.2d at 30.
In Swanson, the worker was a part-time manual laborer at a food warehouse. He normally worked the night shift from 9:00 p.m. to 5:00 a.m., and he was on call seven days a week. The worker worked his normal hours for two nights and was then off for 24 hours. The next day, the worker arose at 6:00 a.m., did farm chores, and worked until 8:00 p.m. remodeling a building in which his wife's catering business was located. At 9:00 p.m., the worker was called to work at the food warehouse. He arrived at 9:50 p.m. and performed his usual duties until 5:00 a.m. the next morning. On the drive home, he fell asleep at the wheel and was killed when his car traveled down an embankment and hit a tree.
Relying on Hed, the administrative law judge awarded workers' compensation dependency benefits. Concluding that Hed did not apply, however, the Minnesota Workers' Compensation Court of Appeals reversed. The Minnesota Supreme Court affirmed that reversal, explaining that neither the "special-errand" nor the "special-hazard" exception to the "going-and-coming" rule applied.
The court stated that "[t]he special-errand rule is invoked when employees with regular hours [are] required to work overtime under circumstances that [make] the travel to and from work more hazardous." Swanson, 439 N.W.2d at 724 (citing A. Larson, The Law of Workmen's Compensation, §§ 16.00, 16.14 (1985)). The court explained that the "special-errand" exception did not apply in Swanson because the worker "did not work regular hours." 439 N.W.2d at 724.
The court stated that "[t]he [special-hazard] exception is applicable only if by virtue of the employment the employee is exposed to a hazard which originates on the employment premises, is a part of the working environment, or if it peculiarly exposes the employee to an external hazard which subjects the employee to a greater personal risk than one has when pursuing ordinary personal affairs." 439 N.W.2d at 724 (quoting Gibberd v. Control Data Corp., 424 N.W.2d 776, 783 (Minn. 1988)). The special-hazard exception did not apply in Swanson because the hazard to which the worker was exposedthe conditions leading to fatiguedid not originate in the working environment but in the worker's off-duty hours. See Gene P. Bowen, Wherein Lies the Duty? Determining Employer Liability for the Actions of Fatigued Employees Commuting from Work, 42 Wayne L.Rev.2091, 2097-98 (1994). Of the two Minnesota cases, Hed is factually more similar to the case before us, butbecause it contains little or no analysis of the legal issueit is not very persuasive.
The facts of a New York case are very similar to the case at hand. In Deland v. Hutchings Psychiatric Center, 203 A.D.2d 776, 611 N.Y.S.2d 44 (1994), the administrative law judge awarded workers' compensation benefits to a nurse who fell asleep while driving home after working *327 double shifts at a psychiatric hospital. The New York appellate court stated the rule that "where there is a reasonable nexus between the risk to which an employee is exposed and the employment, recovery has been upheld." 203 A.D.2d at 778, 611 N.Y.S.2d at 46. The court then recounted the conclusions of the lower tribunals:
"The Workers' Compensation Law Judge held that there was a nexus established between the accident, claimant's falling asleep at the wheel of her car, and her working 28 out of 40 hours during the July 4, 1992 weekend. She concluded that having to drive home after such an exhausting schedule constitutes a reasonably anticipated hazard. The [Workers' Compensation] Board concurred, finding that the employer had called on claimant to work overtime and that her falling asleep was a direct result of the unusually long hours, and that this constituted an accidental injury arising out of and in the course of her employment."
Deland, 203 A.D.2d at 777-78, 611 N.Y.S.2d at 46.
Noting a "substantial body of authority from other states and from the Federal courts ... [as well as Professor Larson] which hold that such injuries are compensable," 203 A.D.2d at 778, 611 N.Y.S.2d at 46, the New York court determined that the record contained substantial evidence "to support the finding of nexus between claimant's employment and her injuries." Id. The court, however, remanded the cause to the Compensation Board for more specific findings that would distinguish it from a contrary Board decision on similar facts.
At least three other jurisdictionsthe District of Columbia, Missouri, and New Jerseyhave allowed workers' compensation benefits for injuries suffered by an exhausted driver who falls asleep on the drive home from work. See Van Devander v. Heller Elec. Co., 405 F.2d 1108 (D.C.Cir.1968) (heavy equipment installer who worked 26 hours without sleep); Snowbarger v. Tri-County Elec. Coop., 793 S.W.2d 348 (Mo.1990) (employee who worked 86 out of 100 hours cleaning up after an ice storm); Nemchick v. Thatcher Glass Mfg. Co., 203 N.J.Super. 137, 495 A.2d 1372 (1985) (supervisor who had been on duty for 27 hours without sleep). All three decisions are based on a variant of the "special-hazard" exception to the going-and-coming rule: that an employer who schedules a worker for unusually long work hours has made an extraordinary demand on the worker that exposes him to a foreseeable risk of a fatigue-related automobile accident.
To be compensable under the Alabama Workers' Compensation Act ("the Act"), a worker's injury must "arise out of and in the course of' his employment. See § 25-5-31, Ala.Code 1975. See also § 25-5-1(8) and (9), Ala.Code 1975. "The phrases `arising out of' and `in the course of' are not synonymous." Kewish v. Alabama Home Builders Self Insurers Fund, 664 So.2d 917, 922 (Ala.Civ.App.1995). They are "separate prerequisites, both of which must be satisfied in order for the injured employee to recover." Grider v. McKenzie, 659 So.2d 612, 615 (Ala.Civ. App.1994).
The decisions from other jurisdictions allowing recovery under workers' compensation laws appear to focus only on the "arising out of" part of the compensability test. They emphasize either a special hazard or a special risk to which the worker's employment foreseeably subjected him, or a nexus between his employment and his injury, which makes his injury compensable. That analysis is an appraisal of causation. See, e.g., Van Devander v. Heller *328 Elec. Co., 405 F.2d 1108, 1110 (D.C.Cir. 1968) ("[w]here the hazard of the journey... `arises' out of and in the course of extraordinary demands of employment there is a discernible causal relationship upon which to justify the administrative tribunal in attributing the hazard to the employment and hence responsibility for the resultant injury"). See generally Dunlop Tire & Rubber Co. v. Pettus, 623 So.2d 313 (Ala.Civ.App.1993) (stating that the phrase "arising out of" refers to the causal connection between the injury and the employment).
The decisions allowing benefits ignore the second part of the compensability test: whether the accident producing the injury was "in the course of" the worker's employment. That inquiry is not one of causation, but of whether the worker, at the time and place of the accident and under the circumstances producing the injury, was "reasonably fulfilling the duties of his employment or engaged in some incident to it." See Massey v. United States Steel Corp., 264 Ala. 227, 230, 86 So.2d 375, 378 (1955).
We have found decisions from three jurisdictions Michigan, Oregon, and Texas that deny workers' compensation benefits for injuries suffered by an exhausted driver who falls asleep on the drive home from work. See Pappas v. Sports Servs., Inc., 68 Mich.App. 423, 243 N.W.2d 10 (1976) (cook who normally worked an eight-hour day not subjected to a special risk by working seven hours' overtime); Krushwitz v. McDonald's Restaurants of Oregon, Inc., 323 Or. 520, 919 P.2d 465 (1996) (high-school student who worked the all-night shift after being in school all day not entitled to benefits because his accident did not occur in the course of his employment); Price v. American Home Assurance Co., 562 S.W.2d 7 (Tex.Civ.App.1977) (waitress who worked 25 out of 28 hours not entitled to benefits because, even if her fatigue arose out of her employment, her accident did not occur in the course of her employment). The Oregon and Texas decisions were based on the workers' failure to establish that their injuries occurred "in the course of" their employment.
As the circuit court's order states, Britt presented no evidence indicating that on her drive home from work she was acting under the control of the Hospital or in furtherance of the Hospital's interests. Even assuming that Britt proved a causal relation between her employment and her injury (an issue we expressly do not decide), she thereby established only one of the two requirements for compensability under the Actthat her injury "arose out of" her employment. She failed to establish, however, that her injury occurred "in the course of" her employment. Like the courts of Oregon and Texas, we hold that because the worker failed to prove both requirements of the test for compensability her injuries are not compensable under the Act.

II. The Tort Claim

The Hospital argues that, if Britt has a remedy for her injuries, it is not via a tort claim against the Hospital. The Hospital insists that the exclusivity provisions of the Act bar Britt's tort claim because, it says, any duty the Hospital owed to Britt stems from their employment relationship. According to the Hospital, that relationship limits Britt's claimif she has a claimto one for workers' compensation benefits. We reject the Hospital's argument. Whether the exclusivity provisions of the Act bar a worker's tort claim is determined by whether the worker's injuries are covered by the Act. See 6 A. Larson and L. Larson, Larson's Workers' Compensation Law § 100.01[4] at 100-8 (2000) ("[t]he operative fact in *329 establishing exclusiveness is that of actual coverage").
"The exclusiveness rule relieves the employer not only of common law tort liability, but also of statutory liability under all state and federal statutes, as well as of liability in contract and in admiralty, for an injury covered by the compensation act."

6 A. Larson and L. Larson, Larson's Workers' Compensation Law § 100.03[1] at 100-11 (2000) (emphasis added).
In Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530 (1937), abrogation on other grounds recognized by Ex parte Harris, 590 So.2d 285 (Ala.1991), the worker, who had sustained injuries from his on-the-job exposure to trisodium phosphate, sued his employer, alleging negligence, breach of a duty to provide a safe place to work, willfulness and wantonness, and a violation of the Defective Machinery Act. The employer defended on the basis that the worker's injury was an occupational disease for which the employer argued that it had no liabilityeither under the Act or at common law. The supreme court stated:
"It is not a matter of doubt, that the Workmen's Compensation Act, in general, was intended in the nature of a substitute between master and servant who elect to come within its provisions, for actions of tortfor personal injuries at common lawand under the state Employer's Liability Act, or other statute giving the employee a right of action.
"However, in light of the provisions of section 13, of the Constitution of 1901, `That all courts shall be open; that every person for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law' it cannot be said that for an injury done a person, not within the provisions of the Workmen's Compensation Act, that it was the legislative intent by the enactment of said law, to deny such person a remedy, if under the common law or the Employer's Liability Act, or other statute he was entitled to maintain an action therefor."
Gentry, 234 Ala. at 318-19, 174 So. at 534. The court held that Gentry's injury was neither an occupational disease nor the result of a job-related "accident," that it was not covered by the Act, and that Gentry was, therefore, left "to his remedy at common law." 234 Ala. at 319, 174 So. at 534.
In Lowman v. Piedmont Executive Shirt Manufacturing Co., 547 So.2d 90 (Ala.1989), the Alabama Supreme Court held that the exclusivity provisions of the Act extend only to job-related injuries. Explaining that coverage under the Act is restricted to injuries arising out of and in the course of employment, the court stated:
"It logically follows that if an accident is not compensable because it is outside the coverage of the Act, then the exclusive remedy provisions of the Act are also inapplicable. Thus, an employer is protected from tort liability only as to injuries expressly covered by the language of the Act."
Lowman, 547 So.2d at 93. Accord Krushwitz v. McDonald's Restaurants of Oregon, Inc., 323 Or. 520, 919 P.2d 465 (1996).
In Krushwitz, the Oregon Supreme Court concluded that an employee who was killed in an automobile accident after he fell asleep while driving home from work did not suffer a "compensable injury" as that term was defined by the Oregon Workers' Compensation Law. The court held, however, that because the employee's death did not occur in the course of his employment, the exclusivity provisions of the Oregon workers' compensation statute *330 did not preclude a wrongful-death action by his mother against the employer.
Professor Larson notes a distinction "between an injury which does not come within the fundamental coverage provisions of the act, and an injury which is in itself covered but for which, under the facts of the particular case, no compensation is payable." 6 A. Larson and L. Larson, Larson's Workers' Compensation Law § 100.04 at 100-23 (2000). Hughes v. Decatur General Hospital, 514 So.2d 935 (Ala.1987), presents an example of "an injury which is in itself covered but for which, under the facts of the particular case, no compensation is payable."
In Hughes, the court held that the administratrix of the estate of a worker whose death arose out of and in the course of her employment, but who left no dependents, was not entitled to bring a wrongful death action against the worker's employer, because the Act had provided the worker's exclusive remedy. The administratrix had argued that because there was no recovery under the Act, the Act did not provide the exclusive remedy. The court disagreed, stating:
"In Slagle v. Reynolds Metals Co., 344 So.2d 1216 (Ala.1977), this court held that Alabama's Workmen's Compensation Act provides the exclusive remedy against an employer for the death of an employee when the fatal injury arose out of or in the course of employment."

514 So.2d at 938 (emphasis added).
The exclusivity provisions of the Act do not bar Britt's tort claim against the Hospital because, as we have held in Part I, Britt's injury did not occur in the course of her employment. Because Britt's injury does not come within the fundamental coverage provisions of the Act, the Act's exclusive-remedy provisions are, likewise, inapplicable to her.

III. Conclusion

The circuit court's judgment as to the workers' compensation claim is affirmed. The summary judgment on the negligence claim is reversed, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and MURDOCK, J., concur.
THOMPSON and PITTMAN, JJ., concur in part and dissent in part.
THOMPSON, Judge, concurring in part and dissenting in part.
I concur in the main opinion's determination that Britt's injury is not compensable under Alabama's Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975. However, I conclude that the trial court properly entered a summary judgment in favor of the Hospital on Britt's claim of negligence.
Britt alleged that the Hospital had a "duty to use reasonable care to protect [her] from hazardous conditions at work, and otherwise to provide a reasonably safe place to work." I interpret Britt's theory of recovery to state a cause of action under § 25-1-1, Ala.Code 1975. Section 25-1-1 establishes an employer's duty to provide an employee with a safe workplace; it also allows an employee a cause of action against a co-employee. Powell v. United States Fid. & Guar. Co., 646 So.2d 637 (Ala.1994).
"Every employer shall furnish employment which shall be reasonably safe for the employees engaged therein and shall furnish and use safety devices and safeguards and shall adopt and use methods and procedures reasonably adequate to render such employment and the places where the employment is performed *331 reasonably safe for his employees and others who are not trespassers, and he shall do everything reasonably necessary to protect the life, health and safety of his employees and others who are not trespassers."
§ 25-1-1(a), Ala.Code 1975.
The exclusivity provisions of the Workers' Compensation Act do not preclude an employee's cause of action under § 25-1-1. Powell v. United States Fid. & Guar. Co., supra. "[H]owever, the exclusivity provisions have limited this cause of action under § 25-1-1 to only those instances where the breach of this duty is willful or intentional." Powell v. United States Fid. & Guar. Co., 646 So.2d at 639.
Further, in Ex parte McCartney Construction Co., 720 So.2d 910 (Ala.1998), the worker sued his employer (McCartney Construction) and a co-employee, alleging in his complaint that the two defendants had intentionally and willfully failed to provide him a safe work environment, in contravention of § 25-1-1, Ala.Code 1975. See also § 25-5-11, Ala.Code 1975. McCartney Construction moved to dismiss the claim against it, arguing that the "exclusive-remedy" provisions of the Workers' Compensation Act barred the plaintiff's recovery. See §§ 25-5-52 and 25-5-53, Ala. Code 1975. The trial court denied that motion. McCartney Construction petitioned for a writ of mandamus directing the trial court to enter an order dismissing it from the action. Our supreme court granted the petition for the writ of mandamus, holding that McCartney Construction was entitled to be dismissed from the action. In so holding, our supreme court stated:
"In Murdock v. Steel Processing Services, Inc., 581 So.2d 846, 848 (Ala.1991), this Court held:
"`The intent of the Alabama Legislature in adopting the exclusivity provisions of the Workmen's Compensation Act was "to provide complete immunity to employers and limited immunity to officers, directors, agents, servants or employees of the same employer ... from civil liability for all causes of action except those based on willful conduct." § 25-5-14. The Legislature added: "[S]uch immunity is an essential aspect of the workers' compensation scheme. The legislature hereby expressly reaffirms its intent, as set forth in section 25-5-53, as amended herein, and sections 25-5-144 and 25-5-194, regarding the exclusivity of the rights and remedies of an injured employee, except as provided herein." Section 25-5-14.'
"And, in Padgett v. Neptune Water Meter Co., 585 So.2d 900, 901 (Ala.1991), we held:
"`In the recent case of Johnson v. Asphalt Hot Mix, 565 So.2d 219 (Ala. 1990), this Court stated that § 25-5-11, Ala.Code 1975, does not provide an action against an employer. Section 25-5-11(a) provides that actions may be maintained against those parties that may be jointly liable with the employer, provided that if the other party is a coemployee, then his actions, in order to give rise to liability, must be willful. Section 25-5-11 does not affect the immunity provided by §§ 25-5-52 and 25-5-53.'
"See, also, Powell v. United States Fidelity & Guaranty Co., 646 So.2d 637 (Ala.1994)."
Ex parte McCartney Constr. Co., 720 So.2d at 911.
Britt alleged that the Hospital negligently failed to provide her with safe working conditions. I conclude that the trial court properly entered the summary judgment in favor of the Hospital. Therefore, *332 I must respectfully dissent from that portion of the main opinion reversing the summary judgment entered in favor of the Hospital on Britt's claim of negligence.
PITTMAN, J., concurs.
NOTES
[1] Britt sued Baptist Health System, Inc., d/b/a Shelby Medical Center and Shelby County Health Care Authority, d/b/a Shelby Medical Center. By order of May 9, 1997, the circuit court determined that Shelby County Health Care Authority, d/b/a Shelby Medical Center, was "the sole proper defendant in this litigation."