Rel: December 6, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————————

### SC-2024-0081

————————————————

## Derrick Crenshaw, as parent and next friend of Iyana Crenshaw, a minor

### v.

## Sonic Drive In of Greenville, Inc.

## Appeal from Butler Circuit Court
## (CV-23-900074)

BRYAN, Justice.

Derrick Crenshaw ("Crenshaw"), as parent and next friend of Iyana Crenshaw ("Iyana"), a minor, appeals from the Butler Circuit Court's

judgment dismissing his negligence action against Sonic Drive In of Greenville, Inc. ("Sonic"). The circuit court concluded that the exclusive-remedy provisions of the Alabama Workers' Compensation Act ("the Act"), § 25-5-1 et seq., Ala. Code 1975, bar Crenshaw's negligence action. On appeal, Crenshaw argues that the Act violates Article I, § 13, of the Alabama Constitution of 2022. We conclude that the Act does not violate § 13, and, thus, we affirm.

In July 2023, Crenshaw, as parent and next friend of Iyana, sued Sonic, alleging a negligence claim. Crenshaw alleged that Iyana was working for Sonic when she was injured in an accident caused by Sonic's negligence. Although the complaint alleged that the injury was caused by an accident "arising out and in the course of Iyana['s] employment" with Sonic, the complaint did not seek workers' compensation benefits under the Act; rather, the complaint alleged only the negligence claim. Sonic filed a motion to dismiss under Rule 12(b)(6), Ala. R. Civ. P., asserting that Crenshaw's negligence claim is barred by the exclusive-remedy provisions of the Act, §§ 25-5-52 and -53, Ala. Code 1975. Those provisions state that, if an employee's injury or death is covered by the Act, the Act provides the employee's exclusive remedy for that injury or

death. The first provision, § 25-5-52, states that the Act provides the exclusive remedy "for an [employee's] injury or death occasioned by an accident or occupational disease proximately resulting from and while engaged in the actual performance of the duties of his or her employment and from a cause originating in such employment or determination thereof." Similarly, § 25-5-53 provides that, "[t]he rights and remedies granted in [the Act] to an employee shall exclude all other rights and remedies of the employee ... at common law, by statute, or otherwise on account of injury, loss of services, or death." Section 25-5-53 further provides that, except as provided for under the Act, no employer shall be civilly liable for an employee's injury or death that is "due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or occupational disease originates in the employment."

In response to the motion to dismiss, Crenshaw did not dispute that Iyana's injury is subject to the Act. Instead, Crenshaw challenged the Act itself, arguing that it is unconstitutional on various grounds. Crenshaw served the attorney general with notice of the constitutional challenges, as required by § 6-6-227, Ala. Code 1975. The attorney

3

general filed a brief arguing that the Act is constitutional, and Sonic also defended the constitutionality of the Act. In February 2024, the circuit court entered a judgment rejecting Crenshaw's constitutional challenges and dismissing his negligence action on the ground that the action is barred by the Act's exclusive-remedy provisions. Crenshaw appealed to this Court. The attorney general filed an amicus curiae brief in support of Sonic, and the Alabama Self-Insurers Association and the Alabama Council of Association Workers' Compensation Self-Insurance Funds also submitted a joint amici curiae brief in support of Sonic.

Initially, we note that "acts of the legislature are presumed constitutional." State ex rel. King v. Morton, 955 So. 2d 1012, 1017 (Ala. 2006). "'In reviewing the constitutionality of a legislative act, this Court will sustain the act "'unless it is clear beyond reasonable doubt'"'" that the act violates the constitution. Id. (quoting Dobbs v. Shelby Cnty. Econ. & Indus. Dev. Auth., 749 So. 2d 425, 428 (Ala. 1999), quoting in turn White v. Reynolds Metals Co., 558 So. 2d 373, 383 (Ala. 1989), quoting in turn Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So. 2d 810, 815 (1944)).

4

On appeal, Crenshaw makes only one of the arguments that he made below challenging the constitutionality of the Act. Crenshaw argues that the Act violates Article I, § 13, of the Alabama Constitution of 2022. Section 13 provides "[t]hat all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay." Crenshaw argues that the Act violates the requirement in § 13 that every person "shall have a remedy by due process of law" because, he says, there is no longer a mutual right of a covered employer and an employee to opt out of coverage under the Act. Crenshaw argues that only an employer, not an employee, may choose to completely opt out of coverage under the Act. Crenshaw argues that the Act is unconstitutional in its entirety.

In arguing that the Act is unconstitutional under § 13, Crenshaw relies heavily on two decisions released by this Court on the same day in 1978, Grantham v. Denke, 359 So. 2d 785 (Ala. 1978), and Pipkin v. Southern Electrical & Pipefitting Co., 358 So. 2d 1015 (Ala. 1978). In Grantham, this Court considered the constitutionality of 1975 amendments to the Act that prohibited an injured employee from

5

maintaining a tort claim against a co-employee. This Court concluded that the co-employee-immunity provision barring claims by an injured employee against a co-employee violated § 13. In relevant part, the Court stated:

> "To permit the … Act by means of the 1975 amendments … to immunize a co-employee from suit by an injured employee would deprive him of rights and remedies he enjoyed under the common law which are preserved under § 13 of our constitution. The Act, adopted in 1919, is a voluntary substitute for the common law, Alabama Employer's Liability Act, and other statutory rights of action for personal injuries against the employer applicable to those who elect to come within its provisions.[1] Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530 (1937). It is this elective option between employer and employee, the parties being free to accept or reject to operate under and abide by the Act, that reconciles the Act with § 13 of the Constitution. Chapman v. Railway Fuel Co., 212 Ala. 106, 101 So. 879 (1924). The election is made upon the basis of a quid pro quo between employer and employee. Each voluntarily gives up rights guaranteed by § 13 in exchange for benefits or protection under the … Act.
>
> "The quid pro quo is solely between employer and employee. The employee retains his right to sue third parties, including co-employees. An election by the employee to be

---

[1]The Alabama Employers' Liability Act became effective in 1886 and mostly codified the common law regarding the relationship between an employer and an employee, but it did modify the common law in some ways. See 1 Terry A. Moore, Alabama Workers' Compensation § 1:6 (2d ed. 2013).

6

bound by the provisions of the Act was an election to 'surrender … rights to any other method, forms, or amount of compensation or damages' from the employer. Act No. 245, Reg. Sess., § 10, p. 208, Acts of Alabama, 1919.

"….

"… [Section] 13 of the Alabama Constitution preserves a right of action of the injured employee against her or his co-employee as well as preserving a remedy for enforcement of that right. The right existed at common law against both employer and co-employee. Enactment of the … Act may provide an elective substitute for the remedy of enforcement against the employer in governance of the relationship of employer-employee. It may not deprive the injured employee of rights against the co-employee, the actual wrongdoer, for it offers no elective substitute remedy for enforcement of these rights. Nor is there any perceived social evil to be eradicated by legislative exercise of the police power as was the case regarding our motor vehicle guest statute (§ 95, Tit. 36, Code 1940; § 32-1-2, Code 1975)."

Grantham, 359 So. 2d at 787-88 (emphasis omitted).

This Court released Pipkin on the same day that it released Grantham. Like Grantham, Pipkin concerned whether an employee injured at work could maintain a negligence action against a co-employee. Citing Grantham, the Court in Pipkin stated that the co-employee-immunity provision was unconstitutional, and, thus, the Court reversed the summary judgment that had been entered in favor of the co-employee defendant. However, the Court in Pipkin also made the

7

following observation about amendments made to the Act in 1973 concerning the elective nature of the Act:

> "Before concluding, we feel compelled to address [the co-employee defendant's] subtle contention that if the legislature had the power to repeal the election option under the … Act and make the Act compulsory through the 1973 amendments, the legislature, likewise, had the power to immunize a co-employee from suit by an injured employee. [The co-employee defendant] submits the Act remained optional until it was amended in 1973, citing the following language from the title to the [a]ct effecting the 1973 amendments to support his contention: '… providing compulsory coverage of subject employers and employees ….' We disagree.
>
> "Initially, we must make clear that the 1973 amendments, as written, only repealed those sections of the Code pertaining to the election procedures governing whether or not the employer and employee would be bound by the provisions of the Act (§§ 274, 275, 276, Tit. 26, Code 1940). The repeal of these procedures in no way affected the elective option between employer and employee existing under the Act as heretofore defined. The constitutional validity of the Act rests upon the same being elective rather than compulsory."

358 So. 2d at 1016.

Relying on Grantham and Pipkin, Crenshaw argues that the Act violates § 13 because, he says, the Act does not contain a mutual elective option; Crenshaw claims that an employer may opt out of coverage but that an employee may not. Before examining that argument further, however, we must discuss this Court's 1988 decision, Reed v. Brunson,

8

527 So. 2d 102 (Ala. 1988), which is the seminal decision regarding challenges to the Act made under § 13. In <u>Reed</u>, the Court considered a 1985 amendment to the Act that allowed claims by injured employees against co-employees if the claims were based on "willful conduct" while prohibiting all other claims against co-employees, <u>e.g.</u>, claims grounded in negligence or wantonness. <u>See</u> § 25-5-11, Ala. Code 1975 (containing the co-employee willful-conduct provision adopted in Act No. 85-41, Ala. Acts 1985). The Court in <u>Reed</u> explained that the Court in <u>Grantham</u> had used the "common-law-rights approach" in evaluating whether the co-employee-immunity provision at issue in <u>Grantham</u> violated § 13. The Court further explained that, in addition to the common-law-rights approach, this Court had in some cases also used the "vested-rights approach" in evaluating whether a statutory provision violates § 13. In a thorough opinion, the Court in <u>Reed</u> applied both the vested-rights approach and the common-law-rights approach in evaluating whether the new co-employee willful-conduct provision violated § 13. Because <u>Reed</u> established the prevailing framework for evaluating challenges to the Act under § 13, we will discuss it in some detail.

In <u>Reed</u>, this Court stated:

"In Woodward Iron Co. v. Bradford, 206 Ala. 447, 90 So. 803 (1921) the constitutionality of the … Act was first challenged. This Court held that, because coverage under the [A]ct was elective, the employer waived his constitutional objections by choosing coverage under the [A]ct. The constitutionality of the [A]ct was again challenged in Chapman v. Railway Fuel Co., 212 Ala. 106, 101 So. 879 (1924). In Chapman, the Court adopted the rule enunciated by the United States Supreme Court in New York Central R.R. v. White, [243 U.S. 188 (1917)]; this Court at 212 Ala. at 109, 101 So. at 881, wrote: '[N]o one has any vested right under the Constitution to the maintenance of common-law doctrines in statutory provisions regulating the relations between employer and employee in respect of rights and liabilities growing out of accidental injuries'; and 'an act abolishing rights and defenses, the parties being free to accept or reject, violates no constitutional rights. All such attacks upon laws of this character have failed of their purposes.'"

527 So. 2d at 107-08.

The Court then discussed Grantham and explained that, by using the common-law rights-approach, the Court in Grantham had departed from the traditional vested-rights approach:

"In Grantham …, the Court held that § 13 of the Alabama Constitution of 1901 ('That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay') invalidated the portion of the statute that extended employer immunity to co-employees. In Grantham, the Court changed its 'vested rights approach' to Section 13, which it had adopted as far back as Coosa River Steamboat Co. v. Barclay & Henderson, 30 Ala. 120 (1857); this approach was reiterated in Peevey v. Cabaniss, 70 Ala.

10

253 (1881); in Chapman v. Railway Fuel Co., [212 Ala. 106, 101 So. 879] (1924); in Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530 (1937); and in Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939). As recently as 1979, one year after Grantham, in Mayo v. Rouselle Corp., 375 So. 2d 449, 451 (Ala. 1979), Justice Almon, writing for the Court, with all Justices concurring, readopted the vested rights approach:

> "'Plaintiff contends that § 13 of the Alabama Constitution of 1901 compels a finding that Code 1975, § 7-2-725, is unconstitutional. We cannot agree. This section of the Constitution preserves to all persons a remedy for accrued or vested causes of action. Therefore, the right to bring an action for breach of warranty by a third person can be modified, limited or repealed as the legislature sees fit, except where such cause of action has already accrued. Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939).' (emphasis supplied).

> "....

> "In Grantham, supra, with Chief Justice Torbert and Justice Maddox dissenting, the Court held that the Legislature could not grant immunity from suit to a co-employee in a job-related accident covered by the … Act. The majority reasoned that co-employee immunity deprives an injured employee of rights and remedies under the common law that are preserved under § 13 of the Alabama Constitution. Though the opinion is silent on this issue, a review of the record in Grantham reveals that the injuries occurred after the enactment of Act No. 86, 4th Ex. Sess, Acts of Alabama 1975[, i.e., the 1975 amendment to the Act at issue in Grantham]. Therefore, Grantham was a departure from the 'vested rights approach.' The majority held that the 'elective' option to be bound by the [A]ct reconciled the [A]ct with § 13 insofar as immunity granted to the employer is concerned. The election was said to be based on a quid pro

11

quo, with each voluntarily giving up rights guaranteed by § 13 in exchange for benefits or protection under the [A]ct; however, the majority was of the view that there was no quid pro quo between the negligent co-employee and the injured employee.

"....

"Without discussion, the Court, in Grantham, [further] held: 'Nor is there any perceived social evil to be eradicated by legislative exercise of the police power as was the case regarding our motor vehicle guest statute.' 359 So. 2d at 788.

"In Fireman's Fund American Insurance Co. v. Coleman, 394 So. 2d 334 (Ala. 1980), only Justices Faulkner and Bloodworth concurred in the majority opinion .... The majority readopted the reasoning in Grantham and extended it to allow third-party suits against corporate officers and supervising employees.

"Justice Shores, in her opinion concurring in the result in Fireman's Fund, explained that in Grantham the Court had changed the approach used in testing the constitutionality of statutes against an Art. I, § 13, attack. The 'vested rights' approach had been replaced by the 'common-law rights approach.' She wrote, at page 352:

"'Legislation which abolishes or alters a common-law cause of action, then, or its enforcement through legal process, is automatically suspect under § 13. It is not, however, automatically invalid. Grantham itself restates the established rule that such legislation will survive constitutional scrutiny if one of two conditions is satisfied:

"'1. The right is voluntarily relinquished by its possessor in

12

> exchange for equivalent benefits or protection, or
>
> "'2. The legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power.'"

Reed, 527 So. 2d at 108-10.

The Court in Reed then examined whether the Act was constitutional using both the vested-rights approach and the common-law-rights approach:

> "I. Vested Rights Approach
>
> "Historically, § 13 ('Every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due process of law ...' (emphasis supplied)) was viewed to apply only in instances where a litigant had a vested interest in a particular cause of action. See Chapman v. Railway Fuel Co., 212 Ala. 106, 101 So. 879 (1924); Mayo v. Rouselle Corp., [375 So. 2d 449 (Ala. 1979)]; Pickett v. Matthews, [238 Ala. 542, 192 So. 261 (1939)].
>
>> "'When a duty has been breached producing a legal claim for damages, such claimant cannot be denied the benefit of his claim for the absence of a remedy. But this provision does not undertake to preserve existing duties against legislative change made before the breach occurs. There can be no claim for damages to the person or property of anyone except as it follows from the breach of a legal duty.'
>
> "Pickett, 238 Ala. at 545, 192 So. at 263.

13

"Because Reed's injuries occurred after the Act became law, under the vested rights approach as espoused in <u>Coosa River Steamboat Co. v. Barclay & Henderson</u>, [30 Ala. 120 (1857)]; <u>Peevey v. Cabaniss</u>, [70 Ala. 253 (1881)]; <u>Chapman v. Railway Fuel Co.</u>, [212 Ala. 106, 101 So. 879 (1924)]; <u>Gentry v. Swann Chemical Co.</u>, [234 Ala. 313, 174 So. 530 (1937)]; <u>Pickett v. Matthews</u>, <u>supra</u>; and <u>Mayo v. Rouselle Corp.</u>, <u>supra</u>, the Act passes constitutional muster with respect to Article I, § 13.

"II.  The <u>'Common-law Rights Approach'</u>

"Justice Shores, in her opinion concurring in the result in <u>Fireman's Fund [American Insurance Co. v. Coleman</u>, 394 So. 2d 334 (Ala. 1980)]</u>, with which Justice Almon concurred, set out the common-law rights approach to reviewing legislation under § 13:

"'Legislation which abolishes or alters a common-law cause of action, then, or its enforcement through legal process, is automatically suspect under § 13.  It is not, however, automatically invalid.  <u>Grantham</u> itself restates the established rule that such legislation will survive constitutional scrutiny if one of two conditions is satisfied:

"'1.  The right is voluntarily relinquished by its possessor in exchange for <u>equivalent benefits or protection</u>, or

"'2. The legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power. [emphasis supplied]

14

> "'I find it helpful to think of these alternatives as two different aspects of the quid pro quo concept: Thus, a right may be abolished if the individual possessor receives something in return for it (the individual quid pro quo dwelt upon in Grantham), or if society at large receives a benefit (thereby justifying exercise of the police power).'

"394 So. 2d at 352."

527 So. 2d at 114-15 (footnote omitted).

The Court in Reed then applied the common-law-rights approach in testing whether the Act's co-employee willful-conduct provision violated § 13. In considering the first condition of the test, i.e., whether the right is voluntarily relinquished by its possessor in exchange for equivalent benefits or protection, the Court concluded that "[t]here is a quid pro quo: remedy for remedy." 527 So. 2d at 115. The Court determined that "[t]here is a mutuality of immunity" and that "[a]n employee relinquishes his right to sue his co-employee for negligence or wantonness in exchange for assurance that he will not be sued by his co-employee for negligence or wantonness." Id. In this part of its analysis, the Court also addressed the issue raised in Pipkin concerning whether the Act remained elective and not mandatory:

15

"In Pipkin …, the Court specifically noted that the 1973 amendments to the … Act 'in no way affected the elective option between employer and employee existing under the Act as heretofore defined.' The question as to whether the Pipkin Court erred in this determination is not squarely before us in the present case. However, for purposes of testing the constitutionality of the Act in question in this case under the first prong of the common law rights approach, we will presume that the conclusion reached by the Court in Pipkin was the correct one."

Reed, 527 So. 2d at 115 n.7. In a special writing concurring in the result, Justice Jones disagreed with the position that the 1973 amendments had not affected the elective option, stating that "[i]t is indeed unfortunate that all members of this Court cannot agree upon an objective, indisputable fact -- that § 25-5-54[, Ala. Code 1975,] no longer contains the 'right to elect' provisions that were part of the … Act from its inception until the 1973 amendment." 527 So. 2d at 122 n.1 (Jones, J., concurring in the result).

The Court then considered whether the second condition of the common-law-rights test had been satisfied, i.e., whether the "'legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power.'" Reed, 527 So. 2d at 115 (quoting Fireman's Fund Am. Ins. Co. v. Coleman, 394 So. 2d 334, 352 (Ala. 1980) (Shores,

16

J., concurring in the result)). The Court indicated that the legislature's

authority in this realm is broad:

> "When considered in regard to the second condition enumerated by Justice Shores in Fireman's Fund, the Act also passes constitutional muster. Justice Beatty, dissenting in Fireman's Fund, wrote:
>
>> "'The limitations upon the legislature's exercise of the police power are few; as was said in Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 13, 18 So. 2d 810 (1944):
>>
>>> "'"[The police] power must not be exercised arbitrarily or capriciously, and there must be some reasonable relation [between] the regulation and the ends to be attained. But if upon the matter men may reasonably differ, in view of all the circumstances, the legislative act in the exercise of the police power must be sustained."'" (emphasis added by Justice Beatty)
>
> "394 So. 2d at 357.
>
> "The legislative findings and intent are set forth in § 25-5-14, [Ala. Code 1975]. They are explicit. Justice Shores, concurring in the result in Fireman's Fund, poses the pertinent question: 'Who is to determine if society at large receives a benefit by the deprivation of the common law remedy, the legislature or the courts?' See 394 So. 2d at 352-53. All questions of 'propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of

17

expediency or wisdom.' Alabama State Federation of Labor v. McAdory, supra, 246 Ala. at 9-10, 18 So. 2d at 815.

"This Court has held that the Legislature had the power to enact the guest statute and deprive a passenger of his common-law right to sue a host driver for negligence. Pickett v. Matthews, [238 Ala. 542, 192 So. 261 (1939)]. This Court has also held that the Legislature had the power to abolish the common-law actions for alienation of affections and criminal conversation, after changing mores had rendered those causes of action obsolete or of no benefit to society. Henley v. Rockett, 243 Ala. 172, 8 So. 2d 852 (1942).

"The Legislature has found that co-employee suits 'are producing a debilitating and adverse effect upon efforts to retain existing, and to attract new industry to this state,' that they '[place] this state at a serious disadvantage in comparison to ... other states with whom this state competes in seeking to attract and retain industrial operations which would provide better job opportunities and increased employment for people in this state,' and that they have 'a disruptive effect upon the relationship among employees and supervisory and management personnel.' Ala. Code (1975), 25-5-14 (1986 Repl. Vol.). It is certainly within the police power of the legislature to act to enhance the economic welfare of the citizens of this state by enhancing harmony in the work place. All questions of 'propriety, wisdom, necessity, utility, and expediency' are exclusively for legislative determination. McAdory, 246 Ala. at 9, 18 So. 2d at 815. The only question for the Court is whether the Legislature has the power to eliminate co-employee suits grounded in negligence or wantonness. We think that the Legislature does have the police power to eliminate such co-employee suits in an attempt to eradicate or ameliorate what it perceives to be a social evil.

"Justice Beatty, dissenting in Fireman's Fund, wrote:

18

"'One firmly ingrained principle of jurisprudence which seems to have been overlooked in Grantham and its offspring is the presumption favoring constitutionality. Alabama State Federation of Labor v. McAdory, supra. In McAdory, after noting the plenary power that is vested in the legislature, it was pointed out at 246 Ala. at 9, 18 So. 2d at 815:

"'"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law."'

"394 So. 2d at 357."

Reed, 527 So. 2d 115-17.

The Court in Reed then concluded:  "Therefore, whether tested by the traditional test of the vested rights approach or by either prong of the common-law-rights approach, the Act is not violative of § 13 of the Alabama Constitution insofar as it abolishes suits against co-employees for negligence or wantonness."  527 So. 2d at 117.

19

Reed established the framework that this Court has used in evaluating § 13 challenges to the Act similar to the challenge here. For example, in Murdock v. Steel Processing Services, Inc., 581 So. 2d 846 (Ala. 1991), the wife of an employee injured at work sued the employer, alleging loss of consortium. Similar to the current case, the trial court dismissed that tort action on the ground that the Act provides the exclusive remedy. On appeal, this Court considered whether the exclusivity provision found in § 25-5-53 of the Act violates § 13. The Court concluded that "[t]he barring of a claim for loss of consortium under the exclusivity provisions of § 25-5-53 does not offend § 13 under either the vested rights approach or the common law approach set forth in Reed …." Murdock, 581 So. 2d at 848. Similarly, in Kruszewski v. Liberty Mutual Insurance Co., 653 So. 2d 935 (Ala. 1995), an injured employee sued a workers' compensation insurance carrier for negligently or wantonly failing to discover a workplace hazard during a safety inspection. The trial court entered a summary judgment in favor of the insurance carrier on the basis of the limited immunity provided to workers' compensation insurance carriers under § 25-5-11. On appeal, the employee argued that § 25-5-11 violates § 13. In concluding that §

25-5-11 is constitutional, the Court, relying on <u>Reed</u>, applied both the vested-rights approach and the common-law-rights approach.[2]  <u>See</u> <u>also</u> <u>Baugher v. Beaver Constr. Co.</u>, 791 So. 2d 932 (Ala. 2000) (applying both the vested-rights approach and the common-law-rights approach in examining whether the statute of repose found in § 6-5-220 et seq., Ala. Code 1975, violates § 13).

Accordingly, we will apply both the vested-rights approach and the common-law-rights approach in determining whether the Act violates § 13.  Crenshaw argues that the vested-rights approach should not be used in this case.  He seems to argue that the vested-rights approach should be used only if the legislature removes a remedy after a right has vested, <u>i.e.</u>, after the injury in this case.  <u>See</u> Crenshaw's brief at 22 n.13.  That is, he seems to say that the vested-rights approach should be used only if it can successfully be used to strike down the challenged law.  However,

---

[2]In <u>Yarchak v. Munford, Inc.</u>, 570 So. 2d 648 (Ala. 1990), this Court considered whether the exclusive-remedy provisions of the Act violate § 13 insofar as those provisions do not allow a wrongful-death action. Because a wrongful-death action is purely statutory, <u>i.e.</u>, it did not exist at common law, the Court did not apply the framework applied in <u>Reed</u> but instead determined only whether the Act's preclusion of a wrongful-death action was arbitrary and capricious, concluding that it was not. <u>Yarchak</u>, 570 So. 2d at 649-50.

that is simply not how we have viewed the application of the test, and we decline to depart from our precedent in this regard. See Reed, Murdock, Kruszewski, and Baugher.

Under the vested-rights approach, Crenshaw's constitutional challenge clearly loses. Iyana's workplace injury occurred after the Act became law. Thus, Crenshaw did not have a vested right in a cause of action when the Act was enacted. Under the vested-rights approach, the Act does not violate § 13 because the Act does not deprive Crenshaw of a vested right in a cause of action. See Reed, Murdock, Kruszewski, and Baugher.

Crenshaw's constitutional challenge also fails under the common-law-rights approach. Under the common-law-rights approach, the Act

> "'will survive constitutional scrutiny if one of two conditions is satisfied:
>
> > "'1. The right is voluntarily relinquished by its possessor in exchange for equivalent benefits or protection, or
> >
> > "'2. The legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power.'"

Reed, 527 So. 2d at 115 (quoting Fireman's Fund, 394 So. 2d at 352 (Shores, J., concurring in the result)) (emphasis in Reed omitted).

22

Crenshaw mostly focuses on the first condition above. As noted, Crenshaw relies on <u>Grantham</u>, in which this Court stated that "[i]t is th[e] elective option between employer and employee, the parties being free to accept or reject to operate under and abide by the Act, that reconciles the Act with § 13 of the Constitution." 359 So. 2d at 787. Crenshaw also cites <u>Pipkin</u>, in which the Court stated that "[t]he constitutional validity of the Act rests upon the same being elective rather than compulsory." 358 So. 2d at 1016. Crenshaw contends that, contrary to the assertion made by the Court in <u>Pipkin</u>, the 1973 amendments to the Act removed the elective option for both employers and employees; that 1992 amendments to the Act restored the elective option for employers but not for employees; that there is therefore no longer a mutual right to opt out of coverage under the Act; and, thus, that the Act is unconstitutional under § 13.

It does not appear that Sonic or the amici dispute Crenshaw's contention that there is no longer a mutual right to opt out of coverage under the Act, and we essentially agree with Crenshaw on this point. The 1973 amendments removed those provisions of the Act providing a procedure by which employers and employees could opt out of the Act,

23

thus essentially removing the elective option. As Justice Jones noted in his special writing in <u>Reed</u>, as of 1988 (when <u>Reed</u> was released), "§ 25-5-54[, Ala. Code 1975,] no longer contain[ed] the 'right to elect' provisions that were part of the ... Act from its inception until the 1973 amendment." 527 So. 2d at 122 n.1 (Jones, J., concurring in the result). However, the 1992 amendments returned the employer's choice to opt out of coverage. <u>See</u> Ala. Acts 1992, Act No. 92-537. Before the 1992 amendments, § 25-5-54, Ala. Code 1975, provided that "[a]ll contracts of employment ... shall be presumed to have been made with reference to and subject to the provisions of this article[, <u>i.e.</u>, Article 3 of the Act, §§ 25-5-50 through -93, Ala. Code 1975, concerning compensation for injury or death caused by work-related accidents]." Following the 1992 amendments, § 25-5-54 now provides that "[e]very employer and employee, except as otherwise specifically provided in this article, shall be presumed to have accepted and come under this article." The 1992 amendments amended § 25-5-50, Ala. Code 1975, to allow employers the option to reject coverage under the Act; § 25-5-50(a), which has been amended several times more times since 1992, now provides, in relevant part, that

> "an employer electing not to accept coverage under this article[, <u>i.e.</u>, Article 3 of the Act, §§ 25-5-50 through -93, Ala.

24

Code 1975, concerning compensation for injury or death caused by work-related accidents,] and Article 4 of [the Act, i.e., §§ 25-5-110 through -123, Ala. Code 1975, concerning compensation for injury or death caused by work-related occupational diseases,] shall notify in writing each employee of the withdrawal of coverage. Additionally, the employer shall post a notice in a conspicuous place notifying all employees and applicants for employment that workers' compensation insurance coverage is not available."

The Act contains no parallel provision to § 25-5-50(a) generally allowing an employee to opt out of coverage under the Act. We do note one small exception, however. A corporate officer who works for a corporation under a "contract of hire" would be considered an employee of the corporation under the Act. Ex parte A-O Mach. Co., 749 So. 2d 1268 (Ala. 1999). Section 25-5-50(b) provides, in part, that "an officer of a corporation or individual limited liability company member may elect to be exempt from coverage by filing written certification of the election with the employer's insurance carrier." Thus, although employees generally may not opt of coverage under the Act, an employee who is also an officer of a corporation or an individual limited-liability company member may elect to be exempt from coverage under § 25-5-50. See Hooks v. Coastal Stone Works, Inc., 164 So. 3d 592 (Ala. Civ. App. 2014) (concluding that a corporate officer who had elected to be exempt from

25

coverage under § 25-5-50(b) was not entitled to benefits under the Act following a subsequent work-related injury). Thus, with the exception of the narrow opt-out provision in § 25-5-50(b), the Act allows an employer to opt out of coverage but does not allow an employee to do the same. See also Ward v. Check Into Cash of Alabama, LLC, 981 So. 2d 434, 437 (Ala. Civ. App. 2007) (noting that, under § 25-5-50(a), "covered employers may still 'opt out' of coverage").[3]

The parties and the amici spend a good part of their briefs arguing about how the absence of a mutual right to opt out of coverage under the Act affects the evaluation of the first condition under the common-law-rights approach, i.e., whether a right is voluntarily relinquished in exchange for equivalent benefits or protection. On this issue, the parties and amici focus on Grantham and Pipkin, debating the precise holdings of those decisions and whether the analysis in those decisions was

---

[3]In his special writing in Reed, Justice Jones stated that he had found only one reported decision "in which the employer (to its dismay) was held to have effectively elected not to be covered" under the Act: Belcher v. Chapman, 242 Ala. 653, 7 So. 2d 859 (1942). 527 So. 2d at 122 n.2. We have found no additional decisions in which an employer has elected to not be covered under the Act.

correct. However, we need not grapple with those issues in this case because, under the common-law-rights approach, the Act is constitutional if either of that test's two conditions are satisfied. Reed, 527 So. 2d at 115. Because the second condition, i.e., the police-power condition, is easily satisfied here, we pretermit discussion of the first condition.

Under the second condition of the common-law-rights approach, the Act will pass constitutional muster under § 13 if it "'eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power.'" Reed, 527 So. 2d at 115. In Reed and subsequent decisions, this Court has given much deference to the legislature in evaluating whether the second condition of the test has been met. In Reed, this Court began its analysis of the second condition by observing that

"Justice Beatty, dissenting in Fireman's Fund, wrote:

"'The limitations upon the legislature's exercise of the police power are few; as was said in Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 13, 18 So. 2d 810 (1944):

"'"[The police] power must not be exercised arbitrarily or capriciously, and there must be some reasonable

27

relation [between] the regulation and the ends to be attained. <u>But if upon the matter men may reasonably differ, in view of all the circumstances, the legislative act in the exercise of the police power must be sustained</u>."' (emphasis added by Justice Beatty)

"394 So. 2d at 357."

527 So. 2d at 116. The Court in <u>Reed</u> later noted that "[a]ll questions of 'propriety, wisdom, necessity, utility, and expediency' are exclusively for legislative determination." 527 So. 2d at 116 (quoting <u>McAdory</u>, 246 Ala. at 9, 18 So. 2d at 815). Later in its analysis, the Court stated:

"Justice Beatty, dissenting in <u>Fireman's Fund</u>, wrote:

"'One firmly ingrained principle of jurisprudence which seems to have been overlooked in <u>Grantham</u> and its offspring is the presumption favoring constitutionality. <u>Alabama State Federation of Labor v. McAdory</u>, <u>supra</u>. In <u>McAdory</u>, after noting the plenary power that is vested in the legislature, it was pointed out at 246 Ala. at 9, 18 So. 2d at 815:

"'"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government. All these principles are embraced in the simple statement that

28

> it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law."'

"394 So. 2d at 357."

Reed, 527 So. 2d 116-17.

It does not appear that this Court has precisely considered whether the enactment of the Act as a whole eradicated or ameliorated a perceived social evil and was thus a valid exercise of the legislature's police power. In Reed, the Court considered the narrower issue of the enactment of the co-employee willful-conduct provision found in § 25-5-11. The legislature provided explicit findings supporting its decision to adopt that provision, making it easy for this Court to uphold the provision. See § 25-5-14, Ala. Code 1975; and Reed, 527 So. 2d at 116. Following Reed, this Court in Murdock, in the context of an employee's spouse's tort claim for loss of consortium, considered whether the enactment of the exclusive-remedy provision found in § 25-5-53 was a valid exercise of the legislature's police power. In the current case, although Crenshaw frames his constitutional challenge as one attacking the Act as a whole, the challenge may also be characterized more narrowly as one challenging the Act's exclusive-remedy provisions, given that Crenshaw's negligence claim directly

29

challenges those provisions. Thus, the current case and <u>Murdock</u>, which also concerned an attempt to maintain a tort claim barred by the exclusive-remedy provisions, are analogous. In <u>Murdock</u>, this Court demonstrated substantial deference to the legislature with this succinct analysis in considering the police-power condition of the test:

> "The intent of the Alabama Legislature in adopting the exclusivity provisions of the … Act was 'to provide complete immunity to employers and limited immunity to officers, directors, agents, servants or employees of the same employer … from civil liability for all causes of action except those based on willful conduct.' § 25-5-14. The Legislature added: '[S]uch immunity is an essential aspect of the workers' compensation scheme. The legislature hereby expressly reaffirms its intent, as set forth in section 25-5-53, as amended herein, and sections 25-5-144 and 25-5-194, regarding the exclusivity of the rights and remedies of an injured employee, except as provided herein.' Section 25-5-14.
>
> "The question of whether to exclude loss of consortium claims against employers was for the Legislature. The Legislature spoke, by enacting the exclusivity provisions. There is nothing in the Alabama Constitution that bars the Legislature from treating a husband and wife as an entity for such purposes."

581 So. 2d at 848.

Following <u>Murdock</u>, this Court in <u>Kruszewski</u> considered the constitutionality of § 25-5-11 insofar as it granted limited immunity to workers' compensation insurance carriers. The Court's discussion of the

second consideration under the common-law-rights approach was even more succinct than the discussion in Murdock:

> "Our consideration of the second condition requires the same conclusion[, i.e., that the provision is constitutional]. As in Reed …, the only question for this Court in the present case is whether the Legislature has the power to eliminate actions by employees against workers' compensation insurance carriers based on negligence or wantonness. We hold that it has such power."

Kruszewski, 653 So. 2d at 938. Thus, with respect to § 13 challenges evaluated under the common-law-rights approach, this Court has shown considerable deference to the legislature in deciding whether the legislature has validly exercised its police power regarding the Act. Reed, Murdock, and Kruszewski.

In passing the Act, the legislature validly exercised its police power by eradicating or ameliorating a perceived social evil. The Court in Reed discussed the problems that the Act was designed to address:

> "It is prudent to view the Act in its historical perspective. To do so, it is necessary for us to view American workmen's compensation acts in their historical perspective. The growth of the Industrial Revolution resulted in many job-related injuries for which compensation was sought in the courts. The common law was not kind to these actions, and the vast majority of the claims were defeated by the common-law defenses of assumption of the risk, contributory negligence, and the fellow-servant doctrine. 1A A. Larson, The Law of Workmen's Compensation, § 4.30 (1972). The non-

responsiveness of the common law to an idea whose time had come caused legislators to devise a compromise system for the recovery of compensation for job related injuries and deaths."

527 So. 2d at 105. Similarly, this Court in Ex parte City of Guntersville,

728 So. 2d 611, 615-16 (Ala. 1998), observed:

"[W]e must look to the origins and purposes of [the Act]. As Professor Larson has written, '[t]he necessity for workers' compensation legislation arose out of the coincidence of a sharp increase in industrial accidents attending the rise of the factory system and a simultaneous decrease in the employee's common-law remedies for his or her injuries.' 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law, § 4.00 (1997). In an effort to meet changing societal needs more efficiently than they were being met by the common law and early statutory law, the states began enacting workers' compensation statutes, in their modern form, in the first part of [the 20th] century. Larson, § 5.30. In doing so, the states created a new system that was delicately balanced between the interests of employees and the interests of employers. Under this new system, the employer is automatically responsible for paying medical and disability benefits to employees who are injured on the job. '[T]he employee and his or her dependents, in exchange for ... modest but assured benefits, give up their common-law right to sue the employer for damages for any injury covered by the act....' Larson, § 1.10(e)."

In his exhaustive treatise, Alabama Workers' Compensation, Judge

Terry Moore discusses the problems that the Act was intended to address:

"To thoroughly understand the genesis of Alabama's workers' compensation laws, the history of American workers' compensation law must first be considered.

"The Alabama Workers' Compensation Act is hardly a product of a unique legislative movement in this state. Instead, the Act resulted from the harsh realities of industrialization and the inadequacies of the common-law system that affected almost the entire Western world at the turn of the 20th century.

"Industrial development in the late 1800s transformed the relatively safe and individualized workplace into an often-dangerous and densely populated site. In urban factories, workers increasingly became the victims of modernization, suffering an increasing amount of injuries related to their work. In leading industrial nations, it soon became apparent that the price of updating their economies was the safety of the common laborer. Statistics from this time show that the number of accidents at the workplace skyrocketed and that more and more of these accidents involved industry-related hazards.

"The law provided little relief for the victims of industrial accidents. During this age of great economic expansion, decisional and statutory law lagged behind economic realities. The common law that regulated employer-employee relations had developed staid rules that may have effectively regulated the relationship of master and servant but were not suited to regulating the relationship between a capitalist and his or her proletariat. As a result, employers rarely incurred legal liability for work-related personal injuries and deaths of employees.

"The main inadequacy of the common law at this time lay in its continuing reliance on the notion of fault. Under the presiding law of the late 19th and early 20th century, an employee could not recover from his or her employer without proving the latter's negligence. The problem facing injured workers becomes quite apparent when one considers that over 70% of all industrial accidents during this time did not result primarily from the employer's negligence. Because the

33

employee could not meet the burden of proving the employer's fault, in the vast majority of cases, the courts denied damages. As a whole, workers injured in industrial accidents failed to find any substantial relief in the case law of the time. Consequently, early industrial workers and their families were forced by judicial doctrine to bear the brunt of the costs of their own unfortunate accidents."

1 Terry A. Moore, Alabama Workers' Compensation § 1:1 (2d ed. 2013)

(footnotes omitted).

Judge Moore further discusses circumstances existing before the adoption of the Act in 1919:

"Assuming an injured worker could convince a judge that the defendant owed him or her a legal duty, Alabama courts strictly required that the worker prove that the defendant had breached the standard of care. An employee who could not prove that the employer had acted negligently could not recover damages. By adhering to the concept of fault, Alabama courts assured that most workers who were injured on the job would not receive financial relief from employers. In most cases, employment-related injuries did not arise out of the employer's negligence but were caused by unforeseeable occurrences or other causes aside from the employer's negligence. By relying on the concept of negligence in employer liability cases, the Alabama courts practically foreclosed employees from meaningful redress for the injuries they suffered due to their employment.

"… A sudden termination of income resulted in the employee's inability to seek a common-law remedy because the employee could not afford legal fees or endure the two-year waiting period for resolution of the case. …"

> "Common-law defenses presented another devastating legal impediment to employees. Application of the fellow-servant rule, the doctrine of contributory negligence, and the defense of assumption of risk precluded recovery in many cases even when the employee could prove the breach of a duty by an employer. These affirmative defenses proved so overwhelming to employees that the legislature specifically targeted them as a justification for imposing the first workmen's compensation act in this state."

Moore, § 1:4 and § 1:5 (footnotes omitted).

Judge Moore also observes how the Act was intended to address problems faced by employers as well:

> "While generally favoring the provision of compensation to injured workers, the Act at the same time is intended to insulate the employer from wasteful litigation and extravagant verdicts. The Act dispenses with most of the issues of liability and damages that prompted employers to incur litigation costs in defense of common-law actions. More importantly, the statute eliminates employer liability for pain and suffering, loss of enjoyment of life, loss of consortium, and punitive damages in most cases. Under the statute, the employee generally is entitled only to medical expenses, limited compensation for lost wages and disability, and, in some cases, vocational rehabilitation costs. In exchange for this compensation, the employee and his or her dependents surrender rights to sue the employer for additional common-law damages, and the employer is generally immunized from further liability."

Moore, § 2:7 (footnotes omitted). See also Chapman v. Railway Fuel Co., 212 Ala. 106, 109, 101 So. 879, 881 (1924) (quoting Jensen v. Southern Pac. Co., 215 N.Y. 514, 524, 109 N.E. 600, 602 (1915), rev'd on other

grounds, 244 U.S. 205 (1917)) ("'[A workers' compensation act] protects both employer and employee, the former from wasteful suits and extravagant verdicts, the latter from the expense, uncertainties, and delays of litigation in all cases, and from the certainty of defeat if unable to establish a case of actionable negligence.'").

Based on the foregoing, we conclude that the legislature acted within its police power in passing the Act, thus satisfying the second condition under the common-law-rights approach. The Act is constitutional under both the vested-rights approach and the common-law-rights approach. Thus, we affirm the circuit court's judgment dismissing Crenshaw's negligence action on the ground that it is barred by the Act's exclusive-remedy provisions.

AFFIRMED.

Parker, C.J., and Shaw, Wise, Sellers, Mendheim, and Stewart, JJ., concur.

Mitchell, J., concurs specially, with opinion.

Cook, J., recuses himself.

36

MITCHELL, Justice (concurring specially).

I concur in the main opinion, which faithfully applies our precedents. I write separately because I am concerned that some of those precedents conflict with the original public meaning of Article I, § 13, of the Alabama Constitution. As best I can tell, Article I, § 13, was originally understood to guard against the corruption of justice. But in a line of cases beginning in the 1970s, our Court has relied on Article I, § 13, to declare a statute "automatically suspect" if it alters a common-law remedy. See, e.g., Fireman's Fund Am. Ins. Co. v. Coleman, 394 So. 2d 334, 352 (Ala. 1980) (Shores, J., concurring in the result); Grantham v. Denke, 359 So. 2d 785 (Ala. 1978); Pipkin v. Southern Elect. & Pipefitting Co., 358 So. 2d 1015 (Ala. 1978). In my view, those cases may have unmoored Article I, § 13, from its text and original understanding. Therefore, I would welcome the opportunity to revisit those precedents in a future case, where a party asks us to do so and provides strong briefing in support of that request.

For now, we have been presented with an excellent amicus brief by the Alabama Attorney General's Office. This is an optimal starting point.

Relying on this brief and the additional research I have been able to conduct, here are the issues as I presently see them.

Article I, § 13, states "[t]hat all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay." Ala. Const. 2022, Art. I, § 13. This provision, in nearly identical form, has been included in each of Alabama's seven constitutions since 1819. And 39 of our sister states contain comparable "open courts" clauses. Jonathan M. Hoffman, By the Course of the Law: The Origins of the Open Courts Clause of State Constitutions, 74 Or. L. Rev. 1279 (1995).

These clauses draw on Magna Carta as interpreted by Sir Edward Coke. Id. at 1281. In fact, our Court has itself noted that Article I, § 13, "is known to have been taken in substance from" Magna Carta. Swann v. Kidd, 79 Ala. 431, 432 (1885). Coke's interpretation of Magna Carta stressed the independence of the judiciary and the importance of protecting justice from corruption. He wrote that Magna Carta's early "open courts" provision protected the right of "every subject of this realme, for injury done to him … [to] take his remedy by the course of the

law, and have justice, and right for the injury done to him, freely without sale, fully without any deniall, and speedily without delay." Sir Edward Coke, The Second Part of the Institutes of the Laws of England, 55-56 (1642).

The Commonwealth of Pennsylvania relied on Coke's writing when drafting its first "open courts" provision in 1790, which was a precursor to Article I, § 13.[4] Hoffman, By the Course of the Law at 1294 n.96; Penn Const. Art. IX, § 11 (1790). The Pennsylvania provision stated "[t]hat all courts shall be open, and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by the due course of law, and right and justice administered, without sale, denial or delay." Penn. Const. Art. IX, § 11 (1790). It was adopted against the backdrop of heated opposition to the Crown's interference with the colonial courts -- opposition that ultimately played a role in instigating the American Revolution. Hoffman, By the Course of the Law at 1300-07. In fact,

---

[4]This was the first "open courts" provision adopted by a State after ratification of the United States Constitution. Delaware had adopted a similar provision immediately after the signing of the Declaration of Independence but before the adoption of the United States Constitution. Hoffman, By the Course of the Law at 1307-11.

during this same period of turmoil on the eve of the Revolution, colonial leaders extensively referenced Coke's writings on Magna Carta. Id.

Courts have since recognized, based in part on Coke's interpretation, that the relevant "open courts" provision of Magna Carta was designed to protect against the abuse of justice. See, e.g., Christianson v. Pioneer Furniture Co., 101 Wis. 343, 347, 77 N.W. 174, 175 (1898). For example, the Wisconsin Supreme Court understood this language to prohibit the Crown's use of arbitrary power and bribery to pervert the course of justice. Id. The Oklahoma and Rhode Island Supreme Courts similarly read Coke's interpretation of Magna Carta to "'abolish, not fixed fees, prescribed for the purposes of revenue, but the fines which were anciently paid to expedite or delay law proceedings and procure favor.'" In re Lee, 64 Okla. 310, 312, 168 P. 53, 55 (1917) (quoting Perce v. Hallett, 13 R.I. 363, 364 (1881)). In addition, the Connecticut Supreme Court interpreted Magna Carta to prohibit "the practice by a corrupt judiciary of demanding gratuities for giving or withholding decisions in pending cases." Doe v. State, 216 Conn. 85, 97, 579 A.2d 37, 43 (1990).

Our Court's "common-law rights" interpretation of Article I, § 13, does not appear to reflect this historical understanding. The "common-law rights" approach is based on the premise that "[l]egislation which abolishes or alters a common-law cause of action … is automatically suspect" under Article I, § 13. Fireman's Fund, 394 So. 2d at 352 (Shores, J., concurring in the result). Under this approach, a statute will survive scrutiny only if "one of two conditions is satisfied": (1) "[t]he right is voluntarily relinquished by its possessor in exchange for equivalent benefits or protection," or (2) "[t]he legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power." Id. In other words, the "common-law rights" approach reads Article I, § 13, to curtail the Legislature's right to modify existing remedies.

But I see nothing in the text or history of Article I, § 13, to suggest that it was intended to "freeze traditional common-law remedies." Hoffman, By the Course of the Law at 1288. Rather, Article I, § 13, appears to exist to preserve the independence of the courts and to ensure that justice is not arbitrarily denied. Nothing more. And if Article I, § 13, does not limit the Legislature's ability to alter common-law remedies, then the "common-law rights" approach to interpreting Article I, § 13,

41

may be unfounded. Because we must "interpret the Alabama Constitution … in accordance with its original public meaning," <u>Barnett v. Jones</u>, 338 So. 3d 757, 766 (Ala. 2021) (Mitchell, J., concurring specially), this may indicate that we should abandon the "common-law rights" test going forward.